32 B.R. 173 (1983)
In re PENN-DIXIE INDUSTRIES, INC., Debtor.
In re PENN-DIXIE STEEL CORPORATION, Debtor.
MARTIN MARIETTA CORPORATION, Plaintiff,
v.
COUNTY OF MADISON, STATE OF IOWA and County of Polk, State of Iowa, Defendants.
Bankruptcy Nos. 80 B 10472, 80 B 10473, Adv. No. 82-5918A.
United States Bankruptcy Court, S.D. New York.
July 28, 1983.
Fried, Frank, Harris, Shriver & Jacobson, New York City, for debtor; William McGuinness, New York City, of counsel.
Garrity, Connolly, Lewis, Lowry & Grimes, New York City, for Martin Marietta Corp., James Garrity, New York City, of counsel.
Norman Jesse, Des Moines, Iowa, for Counties of Madison and Polk, State of Ia.
DECISION AND ORDER ON MOTIONS TO AMEND, FOR AN ACCOUNTING AND TO PAY TAX CLAIMS FORTHWITH
BURTON R. LIFLAND, Bankruptcy Judge.
This matter is before the Court on the motion of Madison and Polk Counties, Iowa *174 ("the counties") to amend the debtor's tax order incorporated into the reorganization plan confirmed by this Court on March 4, 1982. This plan provided, inter alia, a six-year deferred payment scheme to satisfy the tax claims originally secured by liens of the counties on realty parcels located in the counties. The counties seek herein a lumpsum payment based upon these obligations. They also seek an accounting of the proceeds from a sale of the property in question and a declaration that the tax liens they held are delinquent and subject to a statutory interest penalty.
I. Factual Background
On April 7, 1980, Penn Dixie Industries ("Penn Dixie"), now operating as Continental Steel Corporation ("Continental"), filed a voluntary bankruptcy petition under Chapter 11 of Title 11, United States Code. At the time of the filing, the following unpaid real property tax liens had been levied upon certain parcels of real property belonging to Penn Dixie located in Iowa:

 Amount of
 Unpaid
Real Estate County Tax Lien Years
A.
Land, and improvements Defendant, $313,478.88 1978 and
erected thereon, County of 1979
situate in West Polk, Iowa
Des Moines, Iowa
("the West Des Moines
Real Property")
B.
Land, and improvements Defendant, $ 30,649.00 1978 and
erected thereon, County of 1979
situate in Winterset, Madison, Iowa
Iowa ("the Winterset
Real Property")

On or about January 21, 1981, Penn Dixie entered into an Asset Purchase Agreement ("the Agreement") with plaintiff Martin Marietta to sell the West Des Moines and Winterset Real Property to Martin Marietta free and clear of all liens and encumbrances of all persons having claims related to the assets.
By order of this Court entered February 27, 1981, the debtor was authorized to sell these assets free and clear of all liens and encumbrances ("the Sale Order"). The Sale Order provided, inter alia, that any liens on the assets sold would attach to the proceeds of sale and that a sum equal to the aggregate amount of such liens would be deposited in a separate interest-bearing account to which said liens would attach. Disbursement therefrom would be subject to further order of this Court. The closing on this sale under the Agreement took place in April 1981 in New York City. Thereupon, title to the West Des Moines and Winterset Real Property was conveyed by Penn Dixie to Martin Marietta, with the counties' liens and encumbrances attaching to the proceeds of sale.
On February 19, 1982, Penn Dixie filed an application and proposed order to satisfy certain tax claims, including the counties' tax claims, in accordance with the deferred payment provision of Section 1129(a)(9)(C) of the Bankruptcy Code ("the Code"). Notice of settlement of this proposed order was served by mail on the counties. There was no opposition to the entry of the order and on March 1, 1982, this order was entered authorizing Penn Dixie to pay certain tax claims, including those of the counties, over a six-year period ("the Tax Order"). On March 4, 1982, Penn Dixie's Amended Plan of Reorganization was confirmed by order of this Court ("the Confirmation Order"). Paragraph G of the Plan provides that Penn Dixie may defer cash payments on account of tax claims for a six-year period.
Nevertheless, even after the entry of the Confirmation Order, the Sale Order specifying that the lien attached to the proceeds of sale, not to the property itself, and the Tax Order, the counties threatened to sell the property. Shortly after accepting the first payment under the plan six months after confirmation and issuing payment receipts for one of them, the counties pursued the sale of the subject real estate by noticing the sale of the West Des Moines property.
Martin Marietta responded to the threatened sale by commencing the instant adversary proceeding to enjoin the tax sale of the property and to declare that the counties' tax liens attach solely to the proceeds of the sale of the property. A temporary restraining *175 order was entered on July 26, 1982 enjoining the sale. Most recently, on June 21, 1983, a permanent injunction against the sale of the property by the counties was entered on consent of all parties declaring that the unpaid tax liens had been transferred to the proceeds of the sale received by Penn Dixie from Martin Marietta. As to Martin Marietta, this action is concluded.
The counties have brought the instant motion within this adversary proceeding seeking, in essence, a reformation of the confirmation order. Significantly, although the counties received notices of settlement of the above-described orders, the counties never filed any objection to, and took no appeal from, either the order of this Court approving the sale, the order allowing the deferred tax payment scheme, or the order confirming the plan. Also, neither Madison nor Polk County filed a proof of claim against Continental prior to March 16, 1981, the date set by a claims bar order. Indeed, Polk County never filed a proof of claim at all. In July 1981, Madison County filed a late proof of claim in an amount less than that scheduled by Continental, and described the claim not as a secured claim (the word "secured" was stricken), but as a priority claim under Section 507(a)(6). As such a priority claim, it was indeed eligible for payment over a six-year period pursuant to Code Section 1129(a)(9)(C).
In connection with Penn Dixie's application for the order of confirmation, Penn Dixie filed a schedule of secured claims, which claims were contemplated to be paid from the sales escrow account. The counties were not named in the schedule. This schedule was made an exhibit to the Confirmation Order and these claims were paid according to the reorganization plan from proceeds in, inter alia, the escrow account. Although the counties received copies of the Confirmation Order with this exhibit, they asserted no objection and filed no appeal.
II. Issue Presented
Essentially, the county taxing authorities seek revision of the Confirmation Order in this case which relegated payment of the debtor's tax obligation to them over a six-year period pursuant to Section 1129(a)(9)(C) of the Code instead of in a lump sum. Concededly, the payment scheme formulated impacted upon the counties' rights as lien creditors to receive full payment on confirmation or earlier. At issue is whether the counties' right to revision of that incremental payment scheme is precluded by one of the various waiver or estoppel doctrines. For the reasons set forth below, this Court concludes that such a revision is barred by the doctrines of res judicata and estoppel.[1]
III. Discussion of Law
In the instant case, the substantive issue that the counties advance is that the taxes *176 owed them do not qualify for deferred payment under Section 1129(a)(9)(C)[2] because they are not merely Code Section 507(a)(6)(B)[3] priority unsecured claims, but rather claims secured by statutory liens against specific property. Accordingly, the counties urge that these claims, which are secured by liens, must be paid from the proceeds of the sale of the property ahead of all priority claims under Code Section 507. They assert that their claims should have been paid with all other secured claims on the first distribution date pursuant to Article IV of the reorganization plan.
Continental defends, stating that whether the taxes owed qualify for deferred payment under Section 1129(a)(9)(C) is a mixed question of law and fact[4] the merits of which the counties had the opportunity to litigate at the time Penn Dixie applied for the deferred payment order. Continental thus argues that the doctrine of res judicata bars the instant motion by the counties.
a. Res Judicata
The doctrine of res judicata is well-established and has been described as follows:
The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." (quoting Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)). The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.
 er, absent fraud or some other factor
 invalidating the judgment.
Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (other citations omitted) (emphasis added), quoted in Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 578-79, 94 S.Ct. 806, 811-12, 39 L.Ed.2d 9 (1974) and Pepper v. Bankers Life and Casualty Co., 414 F.2d 356, 357 (8th Cir.1969).
Indeed, the United States Supreme Court has gone so far as to declare that a judgment is entitled to res judicata effect against a party to the action even if the court that entered the judgment was without jurisdiction. See Stoll v. Gottlieb, 305 U.S. 165, 172, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938).
In Stoll, a bondholder was a party to the reorganization proceedings of a certain hotel. The hotel debtor proposed a plan pursuant to which, inter alia, the bonds would be discharged and the guaranty cancelled. The bondholder failed to appear at the hearing on confirmation and the Planincluding *177 the provision for the cancellation of the guarantywas confirmed. The bondholder sought and obtained relief from the state court on the ground that the federal district court was without jurisdiction to cancel the guaranty. The state court decision, affirmed by the Illinois Supreme Court, was reversed by the United States Supreme Court on the ground the federal district court's decision was entitled to res judicata effect whether or not the court had jurisdiction to so decide. The Stoll court stated that:
We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation. In this case the order upon the petition to vacate the confirmation settled the contest over jurisdiction. 305 U.S. at 172.
The critical point in the instant case is whether the relief sought presently should have been put forth in the earlier proceedings. "In general a judgment is res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." Heiser v. Woodruff, 327 U.S. 726, 735, 66 S.Ct. 853, 857, 90 L.Ed. 970 (quoting Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)); Grubb v. Public Utilities Commission, 281 U.S. 470, 479, 50 S.Ct. 374, 378, 74 L.Ed. 972 (1930); Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 375, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940). See also, U.S. v. Estes, 448 F.Supp. 971, 975 (N.D.Tex.1978).
In addition, the Supreme Court in New Haven Inclusion Cases, 399 U.S. 392, 481, 90 S.Ct. 2054, 2104, 26 L.Ed.2d 691 (1970), has reiterated this principle. In New Haven, the holders of bonds issued by the New York, New Haven & Hartford Railroad Company ("New Haven") sought the return of stock which was among certain assets which the bankruptcy court had ordered transferred to Penn Central Company in connection with Penn Central's merger with New Haven. Because the Interstate Commerce Commission later determined that the stock had a liquidation value of zero, the bondholders argued that the bankruptcy court would have ordered, in the absence of bids for the shares, the distribution of the stock to the creditors had the court anticipated the zero valuation. The Supreme Court declined to consider this argument, asserting that it was precluded by the doctrine of res judicata, since there had been no appeal from the bankruptcy court order. Id.
It is clear that the counties herein had ample prior opportunity to assert the issues presently before this Court. Neither county filed a proof of a secured claim against Penn Dixie. In addition, although both counties were served with Penn Dixie's applications for the Sale Order, the Tax Order, and the Confirmation Order, they failed to object to the orders. The counties had the opportunity to insist upon the inclusion of their respective claims in determining the amount of proceeds to be set aside in connection with the Sale Order. They also could have objected to the inclusion of their claims within the terms of the Tax Order and/or asserted that they held secured claims when they were served with the order of confirmation with its secured claim schedule. The issues raised herein could have been raised by motion at any time during the reorganization case. Moreover, no appeal was taken from any of the final orders of this Court nor was an objection to confirmation ever made. To allow the counties to go forward with their motion now, more than one year after confirmation, would defeat the time-honored doctrine of res judicata. Parties must not be subject to endless relitigation of issues already decided in a forum that provided the opportunity for a full and complete airing of the issues.
b. Estoppel
"Estoppel [calls for] more than mere knowledge, acquiescence, permission or license. It is granted upon the legal *178 premise that one shall not be permitted to deny that which he has induced another to assume to his prejudice or disadvantage." Civilian Defense, Inc. v. Ross, 152 N.E.2d 160, 162 (Ohio Ct.App.1958). It is an equitable concept which has as its basis the fundamental belief that what is right and proper can be recognized. In application it is not confined to immutable black letter rule, but rather to a basic fairness in dealings among persons.
In Isaak v. County of Yavapai (In re Prescott College), 10 B.R. 316 (D.Ariz.1981), the County of Yavapai, Arizona ("the county") claimed tax liens on certain property of the debtor, Prescott College. Responding to an offer by Prescott College to purchase the assets of the college, the bankruptcy judge sent out a notice of hearing on confirmation of sale. The notice provided a date for a creditor's meeting for the purpose of passing on the offer and outlining the terms and conditions of the offer. The county admitted that it received the notice, made no objections to it, and did not file a proof of claim for the tax liens. The order confirming the sale did not require that the taxes be paid as a condition of the sale nor that the tax liens be transferred to the sale proceeds. The deed itself stated that the transfer was "free of all liens and encumbrances." 10 B.R. at 318.
Based on the nonpayment of the taxes, the county foreclosed on the property and issued a number of tax certificates covering certain parcels of the Prescott College property. In response, appellee Prescott College brought an action in the bankruptcy court where it sought and obtained declaratory and injunctive relief. On appeal, the county argued, inter alia, that the failure to comply with Rule 701 et seq. of the Bankruptcy Rules of Procedure precluded the enforcement of any restrictions on their tax liens. Reasoning that the county had not objected in a timely fashion, the court declared that "generally, the failure to object to known irregularities of a bankruptcy sale estops a party from complaining of such irregularities later." Prescott, supra, at 321 (citing In re Jacobson, 4 F.2d 211 (9th Cir. 1925)). The Prescott court further stated:
Notice has been held sufficient to advise the County that the sale was to be free and clear of liens. The County having received such notice was thus charged with the duty to object to the failure to comply with the procedures outlined in Rule 701, et seq. The County admits that it made no such objection. Accordingly, Yavapai County is estopped from asserting the argument that the sale was conducted improperly.
Prescott, supra at 321.
The operative facts in Prescott and those in the instant case are analogous. The counties in both cases were on notice that the tax order and the amended confirmation plan were pending and failed to object to any perceived irregularity. Penn Dixie's reliance on the actions (or, more appropriately, the inactions) of the counties was certainly reasonable and justified. The counties even went so far as to accept and issue receipts for the first installment payment under the reorganization plan.
Most recently, this principle was reaffirmed in In re La Difference Restaurant, Inc., 29 B.R. 178 (Bkrtcy.Ct.S.D.N.Y.1983). In La Difference, the debtor sought a judgment that it was not liable to the Internal Revenue Service ("IRS") for taxes, interest and penalties beyond the amount stipulated, and enjoining the IRS from enforcing its claim.
Prior to the confirmation of a reorganization, the parties negotiated a stipulation whereby the IRS withdrew various claims and the parties agreed to the amount of the debtor's federal tax liability. Almost three years later, and subsequent to the confirmation of a plan, the IRS notified the debtor that additional monies were owed due to the IRS' erroneous omission of an additional amount from the claim upon which the stipulation had been based. The debtor urged, inter alia, that the IRS was equitably estopped from asserting its claim.
The Court agreed and held that the estoppel doctrine is triggered, by "conduct by one person inconsistent with the position later adopted by him which is prejudicial to *179 the rights of another who relied on such prior conduct to his detriment." La Difference, supra at 182 (citations omitted).
In the case at bar, the Tax Order was incorporated into the debtor's amended plan. The counties never filed objections to or took an appeal from either the order allowing the deferred tax payment scheme or from the order confirming the Plan. Although they may have been entitled to receive full payment on confirmation or earlier, the counties are now estopped from seeking to revise the payment scheme.
Moreover, Penn Dixie relied upon and took action based upon the informed but inactive posture of the counties. It would now inure to Continental's detriment should the tax order be modified as requested by the counties. This is also true of all the other interested parties within this reorganization proceeding. Commitments were made, money changed hands, and property was transferred. These actions cannot be reversed. To do so would clearly prejudice Continental and the other interested parties to the reorganization.
As each interested party jockeyed for position through their respective representatives, a particular allocation of the available assets of Penn Dixie was developed. Assuming that the interested parties were competently and responsibly represented, it is abundantly clear that if the counties obtained the entire tax debt upon confirmation, then conceivably another interested party would have received a lesser share of the assets available to the plan. The counties are now asking for funds which represent a larger "slice of the pie" of available assets. At this late date, the portions of the pie cannot be redistributed without prejudice to at least one other interested party nor can the size of the pie itself be enlarged without prejudice to Continental.
Having determined that litigation of the issue propounded by the counties is barred by the doctrines of res judicata and estoppel, the motion to pay tax claims other than pursuant to the scheme of the confirmed plan is denied.[5]
It is so ordered.
NOTES
[1] The counties in their memorandum of law also make what they term a "jurisdictional" argument that "[i]f the order entered is found to apply to secured tax claims, it is wholly without authority of statute or case law, and is not merely erroneous, but the court is without subject matter jurisdiction to grant the relief requested." However, this argument is in actuality one of statutory interpretation, not one of the jurisdiction of the bankruptcy court. The counties do not really argue that this Court does not have jurisdiction over the property. Any argument that this Court does not have the jurisdiction to apply Section 507(a)(6) would be clearly spurious. Also, this court's jurisdiction is unassailable since all of the relevant orders herein were entered before the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipeline Co., 454 U.S. 1029, 102 S.Ct. 564, 70 L.Ed.2d 472 (1982). Even assuming arguendo that an issue of jurisdiction exists, the finality of a decision, even one concerning subject matter jurisdiction, must, at some point, become paramount. As the Supreme Court recently declared:

A party that has had an opportunity to litigate the question of subject matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinationsboth subject matter and personal.
Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, at 702 n. 9, 102 S.Ct. 2099, at 2104 n. 9, 72 L.Ed.2d 492 (U.S. Supreme Court, 1982) (citing Chicot County Drainage Dist. v. Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938)).
[2] Section 1129(a)(9)(C) provides:

(a) The court shall confirm a plan only if all of the following requirements are met:
(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that
(c) with respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such a claim.
[3] Section 507(a)(6) provides:

(a) The following expenses and claims have priority in the following order:
(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for(B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.
[4] Continental contends that the substantive issues which are now foreclosed from being litigated concern (1) whether a statutory lien exists; (2) if a statutory lien exists, at what point does it attach; (3) by what method is the lien perfected; and (4) whether the lien was perfected.
[5] Because this Court has determined that the counties may not assert that the debt owed them is secured, Code Section 506(b) has no possible application and the counties request for a statutory interest penalty is denied.