In re TOTAL TRANSPORTATION SERVICES, INC., et al., Debtor.

Bankruptcy No. 1–82–01924.

United States Bankruptcy Court, S.D. Ohio, W.D.

July 12, 1984.

Paul A. Nemann, Cincinnati, Ohio, for debtor-in-possession.

Richard Boydston, Cincinnati, Ohio, for Eric B. Yeiser and Charles F. Yeiser.

Robert A. Goering, Cincinnati, Ohio, for Creditors' Committee.

### DECISION ON OBJECTION TO YEISER APPLICATION

BURTON PERLMAN, Bankruptcy Judge.

Eric B. Yeiser and Charles F. Yeiser (hereafter "Applicants") filed an application in this Chapter 11 case for payment to them of the amount of $6,636.00 as an administrative expense. The total request-

ed breaks down to $3,318.00 to each of the applicants, and that amount breaks down further to $1,086.00 on account of each of three leases to the debtor in which one of the Yeisers is the lessor. It should be understood that each of the leases relates to a single truck. In each, the lessor is an investor who has purchased a truck for lease to debtor, which in turn has subleased the truck to the user. It happens that the user for each of the six trucks here in question was the John Sexton Company. A hearing was held on the application at which time testimony was taken and exhibits received in evidence.

The original leases were executed November 20, 1980. They called for payments of $1,086.00 per month for 48 months payable on the first day of the month. The terms of the lease were keyed to an acceptance certificate which provided that the first payment under the lease was due on December 1, 1980, with the last payment being due October 1, 1984. Prior to the filing of the present Chapter 11 case on July 9, 1982, debtor had fallen into arrears on its payments under the leases. Applicants then, subsequent to the filing of the case, commenced an adversary proceeding in this court for the purpose of lifting the stay so that they might proceed against debtor under the lease. The adversary proceeding was dismissed when the parties reached a settlement. The settlement was embodied in an amendment which was approved by the court and executed relative to each lease. Each amendment had the effective date of November 12, 1982. It provided that the term of each lease would be extended an additional five months with the sum of $1,086.00 to be paid as rent for each of those five months as in the original lease. The amendment further provided that rent payments be due on the last day of the month instead of the first as in the original lease. Under the lease amendment payments were to resume at the rate of $1,086.00 per month beginning at the end of November 1982. Applicants evidently concede that no monthly payments were due after July 1, 1983. Thus, beginning with November 1982 through June 1983,

eight payments were due under each amendment to lease. The evidence was that only seven payments were made and the amount here sought to be recovered by Applicants, $6,636.00, represents the amount due under the six amendments to lease and leases for the eighth month (plus $20.00 late fee in connection with each lease.)

In the Chapter 11 case, debtor filed a plan of reorganization on July 1, 1983. In that plan, Applicants here were designated as Class 7 creditors, comprising that entire class. With respect to Class 7 creditors, the original plan provided:

6. The Class 7 creditors, Eric B. Yeiser and Charles F. Yeiser c/o Bartlett & Company, shall be paid on the effective date of the Plan or earlier, if approved by the Court, cash in the amount of $113,-000.00 pro rata in proportion to the amount of their claims, less any principal payments made to said creditors between July 1 and the effective date of the Plan, said amount being an amount which Debtor believes to be in excess of the liquidation value of its collateral.

Applicants rejected that Plan. The parties entered into negotiations and on September 21, 1983 debtor filed a First Amended Plan. In that document, the amount to be paid to Class 7 creditors was changed to $130,-000.00, but otherwise the provision of the original plan was repeated verbatim. Thereafter debtor had occasion to file a Second Amended Plan on November 21, 1983. The provision of the Second Amended Plan with respect to Class 7 creditors was identical to that in the First Amended Plan. An Order confirming the Second Amended Plan was entered November 30, 1983. Applicants neither accepted nor rejected the Second Amended Plan, but, of course, became bound by it upon its confirmation. It is the position of debtor that the $130,000.00 provided in the confirmed plan to be paid to Applicants was mutually understood by Applicants and by the debtor to be in consideration for all outstanding claims by Applicants against debtor, including the month's rent here sought by Applicants.

Applicants deny any such mutual understanding. There is no contention that there is a written agreement which expressly spells out such a mutual understanding.

Notwithstanding the absence of an agreement, either written or oral, after careful consideration of the evidence we are compelled to find the issues in favor of the debtor on grounds of equitable estoppel. There is no dispute that after Applicants rejected the initial plan, the parties engaged in negotiations. Payment of rental obligations under the leases, as well as a purchase price for the vehicles were dealt with in those negotiations. The negotiation regarding rental payments was left unresolved. It was the position of debtor at that time that it would make no further payments of rent under the leases. The lump sum provided for in the plan would be the total it would pay to Applicants. Applicants knew that this was the position of debtor. Moreover, the amount allocated to the various creditors in the plan consumed the entire amount advanced to debtor by its financing bank, so that any departure from the scheme of allocations in the plan would disrupt the reorganization.

While Applicants did not agree to this arrangement, they did not object to it. Instead, they permitted the plan to be confirmed without objection. Having failed to object to the plan, knowing what debtor intended by the plan provision, Applicants are now estopped to contend for a construction of the plan so far as it related to them, other than as asserted by debtor.

The testimony at the hearing on behalf of Applicants was that they did not wish to impede confirmation of the plan, but always intended to assert their right to the amount here sought, to which they felt entitled. Their right to do so, however, was lost when the Second Amended Plan was confirmed without their objection.

The applicable law is well stated at 28 Am.Jur.2d 674. *Estoppel and Waiver* § 57 (1966):

The rule is that where a party with full knowledge, or with sufficient notice or means of knowledge, of his rights and of all the material facts, remains inactive for a considerable time or abstains from impeaching a contract or transaction, or freely does what amounts to a recognition thereof as existing, or acts in a manner inconsistent with its repudiation and so as to affect or interfere with the relation and situation of the parties, so that the other party is induced to suppose that it is recognized, this amounts to acquiescence and the transaction, although originally impeachable, becomes unimpeachable.

*See also, In re Penn Dixie Industries*, 32 B.R. 173, 177–179 (Bankr.S.D.N.Y.1983).

The foregoing constitutes our findings of fact and conclusions of law. In light of them, debtor's objection to the Yeiser application is sustained.

SO ORDERED.