### In re ST. LOUIS FREIGHT LINES, INC., Debtor.

### Bankruptcy No. 79–00352.

United States Bankruptcy Court, E.D. Michigan, N.D.

Dec. 7, 1984.

Ralph I. Selby, Bay City, Mich., John W. Wolf, Saginaw, Mich., for debtor.

Leonard R. Gilman, U.S. Atty., Detroit, Mich., Michael Hluchaniuk, Asst. U.S. Atty., Bay City, Mich., for U.S.A.

## DETERMINATION OF DEBTOR'S POST-PETITION FEDERAL TAX LIABILITY

ARTHUR J. SPECTOR, Bankruptcy Judge.

The Internal Revenue Service requested a determination of and a judgment for the amount of the Debtor's post-petition, pre-confirmation federal tax liability, and a conversion of the Debtor's case from Chapter 11 to Chapter 7. Two primary issues are raised by the briefs of the parties. First: are post-petition claims for tax penalties and interest allowable as administrative claims under § 503 of the Bankruptcy Code? Second: did the Internal Revenue Service correctly apply the payments made by the Debtor on the peculiar facts of this case?

### FACTS

St. Louis Freight Lines, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 18, 1979. On December 12, 1982, the Debtor's Fourth Amended Plan of Reorganization was confirmed by the Court. Article III of the Plan provides that:

"All federal and state withholding and related trust fund employer taxes incurred during the administration of the estate but not paid as of the date of confirmation shall be paid as follows: "In cash within sixty (60) days of the confirmation of the plan."

Between the filing of the petition and December 21, 1982, the Debtor incurred substantial federal withholding, Federal Insurance Contributions Act (FICA), Federal Unemployment Tax Act (FUTA) and Highway Use taxes [1]. Although the precise amount of post-petition taxes owed is not clear,[2] assessed liabilities exceeded $400,000; in addition, the IRS had assessed interest and penalties in excess of $120,000 for the Debtor's non-payment since filing for reorganization. The Debtor and the IRS reached an agreement whereby the Debtor would pay $266,070.60 at the time of the confirmation of the Plan, with the remainder of the balance to be paid in cash within sixty (60) days of the confirmation order. On January 18, 1983, the Debtor transferred $266,070.60 to the government.

The current dispute arose subsequent to this payment. The Debtor alleges that the above payment was made on the express written condition that the money be applied solely to the principal tax assessments and not to the accrued interest and penalties.[3] The IRS, however, deemed the payment to be an involuntary payment. It therefore applied the sum first to the oldest post-petition, pre-confirmation principal, then to the oldest interest and penalties, (first in, first out) as summarized below:

| TYPE OF TAX | PERIOD ENDING | ASSESSED TAX LIABILITY | ASSESSED INTEREST AND PENALTY | AMOUNT OF PAYMENT APPLIED | UNPAID ASSESSED BALANCE |
|---|---|---|---|---|---|
| Withholding and FICA | 03-31-80 | $ 7,840.17 | $ 7,443.90 | $ 15,284.07 | -0- |
| " | 03-31-80 | 48,858.01 | 23,075.29 | 71,933.30 | -0- |
| " | 06-30-81 | 65,089.78 | 31,638.43 | 96,728.21 | -0- |
| " | 09-30-81 | 55,474.83 | 20,317.90 | 75,792.73 | -0- |
| " | 12-31-81 | 49,975.16 | 8,384.80 | 6,332.29 | $52,027.67 |
| | | | Total Payment: | $266,070.60 | |

After this distribution, the government calculated the Debtor's outstanding post-petition, pre-confirmation balance to be $289,849.76. The Debtor, on the other hand, claims that this constituted a misapplication of the funds, resulting in an inflated and erroneous tax liability. It contends that had the payment been directed solely to principal, its remaining liability would have been approximately $179,000 rather than $289,849.76. Although no other payments have been made on the pre-confirmation debt, the Debtor says that it was willing to pay the balance, but that failure of the parties to reach consensus on the total amount due has prevented it from obtain-

1. The Debtor also has outstanding pre-petition taxes due which have not yet been paid, as well as additional post-confirmation taxes which have been paid only in part. Liability for these taxes are governed by different provisions of the Bankruptcy Code and are not addressed by this opinion.

2. In its motion for conversion, the government states that pre-confirmation assessed liabilities, exclusive of interest and penalties, equal $446,378.95; however, in a memorandum of law supporting the motion for summary judgment the assessed tax liability is listed as $434,151.27. In a letter dated December 8, 1982, attorneys for the Debtor indicate that the balance as of October 18, 1982 was $355,779.89.

3. It is unclear from the Debtor's Response to Motion for Summary Judgment whether such express language is found in the Debtor's plan or in other documents not on file with the Court. As will be seen from the discussion herein, it is not important to the decision of this matter.

ing the financing necessary to do so. Meanwhile, the IRS has charged the Debtor with additional interest and penalties of $92,654.95 through March 31, 1984.

On August 31, 1983, the government filed a motion to convert the Debtor's case from Chapter 11 to Chapter 7. On November 14, 1983, it submitted a motion asking this Court to determine the tax liability of the Debtor pursuant to § 505(a)(1) of the Bankruptcy Code. Most recently, it moved for summary judgment on the amount of the Debtor's post-petition taxes. The Debtor has filed objections to all three requests for relief.

## I. NATURE OF POST-PETITION TAX PENALTIES AND INTEREST

■ The Debtor challenges the right of the government to impose penalties and interest on the post-petition, pre-confirmation tax debt. It asserts that the former are not provided for in the Plan, while the latter should not be imposed because it would be inequitable to do so under the circumstances. The government's responses are first, that post-petition penalties are expressly permitted as a priority expense under § 503(b)(1)(C) of the Bankruptcy Code; and second, that interest, although

not expressly allowed by the statute, should also be considered an expense of estate administration. This argument assumes without stating, that the post-petition, pre-confirmation tax liability upon which the penalties and interest are assessed is itself properly classified as an administrative expense. A close examination of various sections of the Bankruptcy Code [4] could lead one to seriously question the validity of this assumption;[5] however, it is this Court's opinion that post-petition tax claims resulting from activities of the trustee or debtor-in-possession are administrative expenses entitled to first priority under 11 U.S.C. § 507(a)(1).

■ Should penalties and interest on those taxes be similarly treated? At least with regard to penalties, the Code provides a clear answer. Whenever any tax is an expense of administration, so is any penalty, fine, or reduction in credit based on that tax. 11 U.S.C. § 503(b)(1)(C). Accordingly, those penalties assessed by the IRS for the Debtor's failure to pay post-petition, pre-confirmation taxes should ordinarily be granted administrative expense status pursuant to § 507(a)(1).

---

**4.** See 11 U.S.C. §§ 502(i), 503(b)(1)(B)(i) and 507(a)(6).

**5.** A literal reading of the sections cited in n. 4 could arguably lead to the conclusion that a post-petition tax claim which "does not arise until after the commencement of the case", 11 U.S.C. § 502(i), should be treated the same as a pre-petition, or sixth-priority, claim under § 507(a)(6). Were this interpretation correct, the claims of the IRS for interest and penalties on the post-petition tax would fail. Although courts and commentators have almost uniformly held the taxes to be an administrative expense, the apparently contradictory meaning of the statute has been recognized. 3 *Collier on Bankruptcy*, ¶ 503.04, 503–23 (15th ed. 1979).

A careful reading of the relevant sections of the Bankruptcy Code and the legislative history accompanying the passage of the Bankruptcy Reform Act of 1978 indicate that the post-petition tax claims should be granted administrative expense status. Congress evidently intended the taxes to be treated as expenses of administration. S.Rep. 989, 95th Cong., 2d. Sess. 66, 72, U.S.Code Cong. & Admin.News 1978, p. 5787.

Moreover, since § 507(a)(6) apparently applies *only* to pre-petition claims, *In re Friendship College, Inc.,* 737 F.2d 430 (4th Cir.1984), "if § 502(i) is read to relegate all post-petition tax claims of the kind described in § 507(a)(6) to pre-petition status, ... the statutory language in § 503(b), *excluding* taxes of a kind specified in § 507(a)(6) and denying them administrative priority, becomes meaningless ..." *In re Carlisle Court, Inc.,* 36 B.R. 209, 217 (Bankr.D.D.C. 1983). The language excepting taxes "of a kind" listed in § 507(a)(6) is apparently intended only to ensure that taxes which arise out of events prior to the debtor's petition, but are not actually assessed until after the commencement of the case, remain the sixth priority status they are intended to receive. 3 *Collier on Bankruptcy*, ¶ 503.04, 503–25 (15th ed. 1979).

For other cases which examine the nature of post-petition tax claims, *see In re Stack Steel & Supply*, 28 B.R. 151, 10 B.C.D. 232 (Bankr.W.D. Wash.1983); *In re New England Carpet Co.*, 26 B.R. 934, 10 B.C.D. 227 (Bankr.D.Vt.1983); *In re Westholt Mfg., Inc.*, 20 B.R. 368, 9 B.C.D. 181 (Bankr.D.Kan.1982), *aff'd*, 36 B.R. 932, 10 B.C.D. 1428 (D.Kan.1984).

With regard to interest, the answer is not directly expressed in the Code, since § 503(b) makes no mention of interest on taxes. The IRS, not surprisingly, asserts that interest should be granted administrative priority. In support of this claim, it notes that the Senate favored administrative status for interest;[6] additionally, it contends that failure to allow interest defeats the Code's goal of encouraging creditors to deal with the post-petition estate. If interest is not allowed as an administrative claim, the creditor is essentially forced to give the estate an interest-free loan, at the expense of the creditor and for the benefit of unsecured creditors. Finally, it argues that since § 503(b) is not an exhaustive declaration of allowable administrative expenses, interest can and should be allowed. *See In re Labine*, 12 B.C.D. 186 (Bankr.E.D.Mich.1984).

Courts addressing the classification of interest on administrative tax claims have come to different conclusions. In *In re Friendship College*, 737 F.2d 430 (4th Cir. 1984), the court examined the legislative history and held that interest on post-petition taxes are an administrative expense of the estate because it should be treated consistently with assessed penalties. *See also In re Razorback Ready-Mix Concrete*

*Co.*, 45 B.R. 917, 12 B.C.D. 356 (Bankr.E. D.Ark.1984).[7] On the other hand, two other cases which examined the same legislative background held that the omission of interest was intentional and denied the claim of the taxing authority. *H & C Enterprises*, 35 B.R. 352 (Bankr.D.Idaho 1983); *In re Stack Steel & Supply Co.*, 28 B.R. 151, 10 B.C.D. 232 (Bankr.W.D.Wash. 1983). This Court could analyze in detail whether and under what circumstances interest is to be treated as an administrative expense.[8] However, as will be explained shortly, it is unnecessary to do so since the facts of this case prevent the Internal Revenue Service from claiming interest payments for the post-petition, pre-confirmation debt.

## II. APPLICATION OF FUNDS RECEIVED BY THE IRS

Having determined that post-petition tax claims and penalties are to be allowed administrative priority under § 503(b) (while refraining from making a ruling regarding interest at this time), it is now appropriate to examine the treatment of these claims with respect to the facts of this case. The parties are in dispute over the government's application of those funds already paid by the Debtor. The Debtor claims

---

**6.** S.Rep. 95–989, 95th Cong., 2nd Sess. (1978) at 66, 72.

**7.** It should be noted that that decision erroneously states that interest is *expressly* allowed in § 503(b)(1).

**8.** This matter could be analyzed from various viewpoints. First, it should be noted that although interest and penalties are both imposed largely to compensate the government for the delay in receipt of taxes, *Avon Products, Inc. v. United States*, 588 F.2d 342, 343 (2nd Cir.1978); *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), they are imposed by separate sections of the Internal Revenue Code for somewhat separate reasons. Congress was undoubtedly aware of the distinctions in both terminology and application when it passed the Bankruptcy Reform Act of 1978.

Second, one could look at the practical implications of imposing both a penalty and interest. For example, interest on payments outstanding and due to the government between January 31, 1980 and January 31, 1982 are charged with interest at a rate of 12%; from February 1, 1982 to January 1, 1983, such amounts accumulated interest at a rate of 20%. 26 C.F.R. § 301.6621–1(a)(2). Penalties may range from 5% of the tax due, *see* 26 U.S.C. § 6653, to 100% of the tax due, *see* 26 U.S.C. § 6672. Obviously, the amount that any particular taxpayer might owe can vary tremendously. It is equally evident that the total amount can be substantial. In the instant case, the penalties and interest assessed by the IRS is approximately 28% of the base tax liability. Since in many cases each dollar paid to a party with an administrative claim results in one dollar less to the pool of resources available to non-priority claimants, it is not unreasonable to hypothesize that Congress intended to allow taxing authorities interest or penalties, but not both.

Finally, there are no other provisions in the Bankruptcy Code in which post-petition interest might be granted a priority other than as an administrative expense. Thus, it appears that the determination is an all-or-nothing proposition—either it is allowed as an expense of administration or it is disallowed in full.

that since its plan provides only for the payment of "federal and state withholding and related trust fund employer taxes", and that since interest and penalties are not included in these Class 2 administrative claims, the payments made on January 18, 1983 should have been allocated entirely to the base tax liability. The IRS justifies its distribution of that payment by claiming that because the payments were involuntary, they could be allocated according to the government's discretion.

Under IRS Policy Statement P–5–60 (reprinted in CCH Internal Revenue Manual at 1305–15) the government may allocate involuntary payments to principal, interest and penalties at its discretion, regardless of the taxpayer's instructions. This policy has been judicially approved; *see e.g., United States v. DeBeradinis*, 395 F.Supp. 944, 952 (D.Conn.1975), *aff'd mem.* 538 F.2d 315 (2nd Cir.1976). It is the IRS' contention that tax payments made during the course of bankruptcy proceedings are involuntary; case law discussing this issue tends to support the argument. In *Amos v. Commissioner*, 47 T.C. 65, 69 (1966), the tax court defined an involuntary payment as "any payment received by agents of the United States as a result of distraint or from a legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefor". Courts applying this definition have generally held that payments made during bankruptcy proceedings meet these criteria. In *Muntwyler v. United States*, 703 F.2d 1030 (7th Cir.1983), for example, the court held that the filing of a tax claim with a non-bankruptcy trustee was not sufficient administrative action to make the payments involuntary, but implied that it might have reached a different result had the debtor been involved in a formal bankruptcy proceeding. *Id.*, 703 F.2d at 1034, n. 2. A recently decided case in this district expressly adopted the position that a payment made by a debtor's bankruptcy estate is involuntary. In *In re Mr. Marvins, Inc.*, 84–1 USTC ¶ 9270

(E.D.Mich.1984) the bankruptcy judge had entered an order authorizing the trustee to designate the allocation of payments to the debtor's tax trust fund liability. Upon appeal by the IRS, the district court reversed the order, ruled that the payments were involuntary, and held that the IRS had the right to apply the payments it received in its own manner. Relying largely on the *Amos* and *Muntwyler* decisions, the district court noted that the payments resulted from various litigation and that payments to creditors under the Bankruptcy Code can not be voluntary.

As a matter of tax law, the ruling of the district court is controlling upon this Court and precludes questioning whether the mere existence of a bankruptcy proceeding automatically renders all payments made by the debtor involuntary. As a matter of bankruptcy law, however, this Court has jurisdiction to examine and interpret the terms of the confirmed plan which address the distribution of post-petition, preconfirmation taxes. *Shores v. Hendy Realization Co.*, 133 F.2d 738 (9th Cir.1943); *In re Hermitage Bldg. Corp.*, 100 F.2d 597 (7th Cir.1938); *In re Coral Air, Inc.*, 40 B.R. 979 (Bankr.D.V.I.1984); *In re Arctic Enterprises, Inc.*, 35 B.R. 978, 11 B.C.D. 855 (Bankr.D.Minn.1983). Section 1141(a) of the Code provides that confirmation binds the debtor, creditors and other parties in interest to the terms of the plan, even if a party has not accepted the plan.[9] Case law has established the binding contractual nature of the plan. *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358 (5th Cir.1972); *Denver & R.G.W.R. Co. v. Goldman, Sachs & Co.*, 212 F.2d 627 (10th Cir.1954); *Evans v. Dearborn Machinery Movers Co.*, 200 F.2d 125 (6th Cir.1953); *In re Garsal Realty, Inc.* 12 B.C.D. 173 (N.D. N.Y.1984). This rule has recently been used to bind the IRS and other taxing authorities to the terms of a debtor's confirmed plan. *In re Gurwitch*, 10 C.B.C.2d 722 (Bankr.S.D.Fla.1984); *In re Penn-Dix-*

---

**9.** It should be noted that the IRS expressly "approved" the order confirming the plan. It also withdrew its prior objection to confirmation.

*ie Indus.*, 32 B.R. 173, 10 B.C.D. 1226 (Bankr.S.D.N.Y.1983). It is equally well-established that an order confirming a plan is an appealable order which has a *res judicata* effect on all issues that could have been raised regarding the claim. *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Miller v. Meinhard-Commercial Corp., supra; In re Penn-Dixie Indus., supra. See also* 5 *Collier on Bankruptcy*, ¶ 1141.01 (15th ed. 1979). In other words, a party in interest—in this case the IRS—is bound by the terms of the plan when confirmed, even if the plan ultimately provides it with less than that to which it is otherwise legally entitled.

■ Article III of the plan provides only that "withholding and related trust fund employer *taxes*" incurred between filing and confirmation were to be paid within 60 days in cash. No reference is made to payment of interest and penalties, nor does the plan mention whether "taxes" are meant to include interest and penalties as well as the original tax. No insight can be gleaned from other provisions of the plan. The Court must therefore read the plain words of the part of the plan at issue. Penalties are penalties and are not taxes. The Bankruptcy Code treats them as different.[10] Thus it is not only simplistic but inaccurate to characterize a "penalty" as merely a "part and parcel of the tax".[11]

The plan classifies[12] "federal and state withholding and related trust fund employer taxes" as administrative expenses and says that only these will be paid as such (essentially in cash in full at about the date of confirmation). The universe of claims theoretically entitled to administrative expense priority includes more than mere withholding taxes. It includes post-petition wages, for example. § 503(b)(1)(A). It includes professional compensation. § 503(b)(2). Most importantly, it also includes any penalty relating to a tax entitled to such priority. § 503(b)(1)(C). But the Debtor's plan included only withholding-type taxes—one species only of such claims—within the class of administrative expense priority. By impermissibly excluding penalties assessed on these taxes from the class entitled to administrative expense priority, the Debtor's plan may not comply "with the applicable provisions of ... title [11]", § 1129(a)(1), and therefore perhaps should not have been confirmed over a timely objection on this ground.[13] Thus, if the Court were today deciding an objection to the confirmation of the debtor's plan of reorganization on the ground that it omits reference to tax penalties and therefore does not propose payment of them as required by § 503(b)(1)(C), we might be constrained to agree and deny confirmation. But that day has long since passed. The plan proposed to pay taxes—not penalties

---

**10.** *See, e.g.* §§ 502(b)(2), 523(a)(7) and 726(a)(5).

**11.** The Court is aware of language in the Internal Revenue Code which deems reference to taxes to include any penalties imposed with respect to that tax. 26 U.S.C. § 6671. However, in the absence of any language in the plan incorporating, by reference or otherwise, the definitions used in the Internal Revenue Code, reliance solely upon these provisions when interpreting the debtor's plan is unjustified.

**12.** We recognize that claims which are "of a kind specified in section 507(a)(1) ... of ... title [11]" need not be placed in a designated class. § 1123(a)(1). However, even though § 1129(a)(9) provides specific treatment for such claims, it is not impermissible for a debtor to classify such claims in its plan. *See In re Penn-Dixie Indus.*, 32 B.R. 173, 10 B.C.D. 1226, (Bankr.S.D.N.Y.1983). In this case, the Debtor

did indeed provide a specific class for administrative expense claims.

**13.** Section 1129(a)(9) provides a specific treatment for holders of claims entitled to administrative expense and other priorities, "[e]xcept to the extent that the holder has agreed to a different treatment of such claim ..." In this case, the IRS specifically, expressly and in writing "approved" the confirmation of the Debtor's Fourth Amended Plan of Reorganization. It thus "agreed" to a treatment of its claim which is substantially less remunerative than the treatment intended by the Code. Alternatively, if the endorsement of its "approval" is read to be something less than an "agreement" to a different treatment, then the plan should not have been confirmed. By not appealing at the time of confirmation, this mistake of law is now cemented into the supporting pillars upon which the plan rests. The doctrine of repose enjoins disturbing it.

and interest. The plan was confirmed. No appeal was taken.[14] The matter is *res judicata. Stoll v. Gottlieb, supra; In re Penn-Dixie Indus., supra.* Our task now is merely to interpret and enforce the terms of the confirmed plan. As stated above, the plan is interpreted to provide the IRS with only part of what it would have been entitled to if it had timely acted. It requires the nearly immediate cash payment of all withholding-type taxes incurred post-petition. It does not require the payment of interest on those taxes in that fashion. And, it does not require the payment of penalties derived from those taxes as expenses of estate administration (even though upon a timely objection it would have been amended to do so). Accordingly, the IRS' application of the January 18, 1983 payment by the Debtor is inconsistent with the terms of the plan, to which it is bound. The correct application would be to apply all of it towards its administrative claim—as that term is defined in the plan: "federal ... withholding and related trust fund employer *taxes* ".

Finally, the Court notes that even had the payments made on January 18, 1983, been allocated according to the Debtor's directions and pursuant to the guidelines in this opinion, the payments would still have been significantly lower than that needed to pay off its tax debt. The Debtor has asserted that it could not pay the remainder of the tax debt within the allotted 60-day period because the uncertainty of its tax liability prevented it from obtaining financing; the IRS has done nothing to refute this assertion. Thus conversion to Chapter 7 is not now warranted. The Court is unable to make a precise determination of the precise amount of tax due because the figures present in the record are insufficient for that purpose. Therefore, the parties are directed to submit to the Court a final determination of the Debtor's post-petition, pre-confirmation tax liability within 30 days, using the formula and guidelines stated herein. Once this figure is ascertained, the Debtor shall have 34 days—the period between January 18, 1983 when it made the payment and February 21, 1983 when the 60-day period would have expired—to obtain the necessary financing and to make these payments. Upon the Debtor's failure to timely pay, the government's motion to convert the case to Chapter 7 will again be considered. Upon presentation, an appropriate order will be signed by the Court.

---

**14.** The major distinction between this case and *In re Mr. Marvins, Inc.*, 84–1 USTC ¶ 9270 (E.D.Mich.1984) is that there the IRS timely filed a direct appeal from the objectionable order of the bankruptcy court whereas here the plan and the order confirming it were not appealed and are therefore binding.