**UNITED STATES of America, Plaintiff,**

v.

**STANDARD STATE BANK, Defendant.**

**No. 88–0058–CV–W–6.**

United States District Court,
W.D. Missouri, W.D.

Sept. 30, 1988.

Kenneth E. Weinfurt, Asst. U.S. Atty., Kansas City, Mo., Loren B. Mark, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Charles W. German and Dennis M. Alt, Stinson, Mag & Fizzell, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

SACHS, District Judge.

The instant lawsuit concerns rights to certain inventory and accounts receivable allegedly acquired by debtor Omni Electric Company (debtor) after the commencement, on August 22, 1984, of Chapter 11 reorganization proceedings in the United States Bankruptcy Court for the Western District of Missouri. United States of America (Government), plaintiff herein, alleges in its Complaint that defendant Standard State Bank (the Bank) 1) converted property subject to an IRS tax lien and 2) wrongfully failed to honor a levy made pursuant to that tax lien. The Bank contends, however, that plaintiff's action is barred by *res judicata* because the tax lien at issue was subordinated to the Bank's security interest in the property under the terms of a plan of reorganization confirmed by the bankruptcy court. Presently pending before the court are defendant's Motion to Dismiss Or, Alternatively, for Summary Judgment and plaintiff's Counter–Motion for Summary Judgment.

The court concludes that there are no material facts in controversy that would prevent granting defendant's motion.

## FACTUAL BACKGROUND

The property at issue herein is inventory and accounts receivable of debtor Omni which allegedly came into existence after September 8, 1984, the date on which the Government alleges its tax lien attached.[1]

During 1981 and 1982, the Bank provided financing to debtor Omni. Complaint ¶ 14. In connection with such financing, the Bank acquired a security interest in, *inter alia*, Omni's accounts receivable and inventory, including all after-acquired accounts receivable and inventory. The Bank alleges that it properly perfected its security interest pursuant to the laws of the State of Missouri.

On August 22, 1984, debtor Omni filed a petition in the United States Bankruptcy Court for the Western District of Missouri initiating its case (the Bankruptcy Case) under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the Code), Case No. 84–02639–3–11. Complaint ¶ 8. On October 5, 1984, the IRS filed its initial proof of claim in the Bankruptcy Case, claiming a secured obligation owing from the debtor to it in the amount of $84,995.58, an unsecured obligation entitled to priority of $53,875.80, and a general unsecured claim of $2,943.60. *See* Exhibit B to Suggestions in Support of Standard State Bank's Motion to Dismiss or Alternatively, for Summary Judgment (Document No. 2). A supplemental proof of claim was filed by the IRS in February 1985 asserting an additional claim of $45,570.44—$43,-400.42 entitled to priority treatment and $2,170.02 as a general unsecured claim. *See* Exhibit C to Doc. No. 2. On May 6, 1985, the Government filed its entry of appearance in the Bankruptcy Case. *See* Exhibit A to Doc. No. 2.

Debtor Omni filed its plan for reorganization under Chapter 11 on February 11, 1985. A hearing was held on May 15, 1985, and on May 23, 1985, Chief Bankruptcy Judge Stewart issued an Order Confirming the Plan as Modified. The modification provided:

1. for the debtor-in-possession to pay all post-petition federal tax liabilities due to the Internal Revenue Service by Decem-

---

1. The IRS alleges that its tax lien was filed with the Jackson County Recorder of Deeds, Independence, Missouri, on July 23, 1984. The date of September 8, 1984, apparently refers to § 6323(c) of the Internal Revenue Code, 26 U.S. C. § 6323(c). In general, § '6323(c) provides that an IRS tax lien may attach to accounts receivable and inventory which come into existence 46 days after the IRS properly files notice of its lien. 26 U.S.C. § 6323(c)(2)(A).

ber 31, 1985 with minimum monthly payments thereon of $4,000.00 commencing on or before June 15, 1985;

2. for the debtor-in-possession to remain current on all federal tax liabilities incurred on and after May 15, 1985;

3. for the debtor-in-possession to make monthly payments of $3,000.00 to the Internal Revenue Service commencing June 15, 1985, in satisfaction of the debtor-in-possession's pre-petition federal tax liabilities;

4. for the debtor-in-possession to submit a copy of its monthly operating statements filed herein to E. Eugene Harrison, Assistant United States Attorney, 549 United States Courthouse, 811 Grand Avenue, Kansas City, Missouri 64106;

5. for the debtor-in-possession to cure its arrearages with Standard State Bank on or before June 15, 1985; and

6. for the Standard State Bank to be given a lien on all post-petition accounts receivable of the debtor in possession.

Exhibit 1 to United States' Memorandum in Opposition to Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment and in Support of the United States'' Countermotion for Summary Judgment (Doc. No. 6).

Additionally, the Order Confirming Plan as Modified was made conditional upon:

1. the withholding of any discharge until full consummation of the plan;

2. the retention of jurisdiction by the bankruptcy court for all purposes until full consummation of the plan; and

3. the continued filing of monthly operating reports for six months.

Exhibit 1. to Doc. No. 6, at 5.

In addition to the confirmation order's grant to the Bank of a lien on all post-petition accounts receivable of the debtor-in-possession, the original plan, as confirmed, provided that the Bank "shall also retain a lien on all post-Petition inventory acquired by the Debtor." Exh. B, Doc. 14, page 1 of confirmation order and page 8 of plan. The parties agree that under the confirmed plan the Government surrendered tax lien rights for anticipated favorable treatment as an unsecured creditor and that the Bank retained its lien rights to the property in question.

On December 12, 1985, the Government moved for dismissal or conversion of the Bankruptcy Case. The Motion to Dismiss recited the following material defaults by debtor Omni:

1. The debtor had not made its $4,000 monthly payments to retire its post-petition federal tax liabilities, for the months of August, September, October, and November 1985;

2. The debtor had not remained current on all of its federal tax liabilities incurred on and after May 15, 1985;

3. The debtor had not made its $3,000 monthly payments to satisfy its pre-petition federal tax liabilities, for the months of August, September, October, and November of 1985; and

4. The debtor had not filed any of the required monthly operating statements.

Exhibit F to Doc. No. 2, at 3–4.

The Bankruptcy Court held a hearing on the Government's Motion to Dismiss on January 23, 1986. Subsequently, the Government filed a report to the court on the status of negotiations between creditors the IRS and Standard State Bank as to which had priority as to the debtor's accounts receivable and inventory. No action was taken to attempt to alter the provisions of the Confirmed Plan as Modified, or to seek review of the Bankruptcy Court's Order. *See* Exhibit G to Doc. No. 2.

By Oral Order of April 16, 1986, the Bankruptcy Court dismissed the debtor's Chapter 11 proceedings. At the same time, the court granted the Bank relief from the automatic stay invoked by 11 U.S.C. § 362 to proceed against the property which secured its claim. Exhibit H to Doc. No. 2. The dismissal order, which was memorialized by Order dated May 7, 1986, made no reference to the Confirmed Plan as Modified.

On May 13, 1986, the Bank entered into an agreement under which it sold the assets of debtor Omni, including the property at issue herein, to Omni Electrical Con-

struction, Inc.[2] On June 25, 1987, the IRS served the Bank with a levy and final demand for payment with respect to the proceeds from the sale of debtor Omni's assets. Each party claims priority of its competing lien as to the inventory and accounts receivable of debtor Omni which came into existence after September 8, 1984.

## CONTENTIONS

The Bank contends that during the debtor's Chapter 11 proceedings, to which both the Bank and the Government were parties, the issue of relative priority between the IRS tax lien and the Bank's security interest in the debtor's property was finally resolved and ultimately set out in the plan confirmed by the Bankruptcy Court. Because the Government chose not to appeal the order of confirmation immediately following its issuance and failed to seek revocation or modification of the plan at or before the time of dismissal of the Chapter 11 proceedings, the Bank argues that the bankruptcy court's Order Confirming Plan as Modified is *res judicata* and, therefore, bars any attempt by the Government to relitigate the priority issue. Confirmed reorganization plans are treated as final judgments, according to the Bank, subject to vacation for fraud within 180 days of entry. 11 U.S.C. § 1144.

The Government notes that reorganization proceedings are subject to dismissal when, as here, there is a material default by the debtor with respect to a confirmed plan. 11 U.S.C. § 1112. Both parties agree that the effects of dismissal are set forth in 11 U.S.C. § 349. The Government contends that preexisting liens are generally reinstated, under 11 U.S.C. § 349(b)(1)(C), and that dismissals generally revest the property of the estate in the entity in which such property was vested immediately before the commencement of the case. 11 U.S.C. § 349(b)(3). The Bank responds that (1) only certain liens are gen-

erally reinstated on dismissal, not including liens surrendered or invalidated in reorganization or a reorganization plan; (2) the property revestment provision refers to property revesting in a debtor (which already occurs upon confirmation of a plan); and (3) the bankruptcy court in any event can order "otherwise." In the present case, it may well be asserted that the coupling of a dismissal with an order authorizing the Bank to proceed to enforce its security interests implicitly overrides any contrary statutory presumptions regarding the effects of a dismissal.[3] Even if this ruling could be treated as ambiguous, with respect to an intended revival of the Government lien, the Government could have sought clarification to the effect that any foreclosure would be without prejudice to its claim to the proceeds. An appeal from denial of such a request would have preserved the Government's claim.

## ANALYSIS

Except for the dismissal of the reorganization proceeding, it is clear that the confirmed plan would have barred plaintiff's claim to a tax lien superior to defendant's rights. *In re Penn–Dixie Industries, Inc.,* 32 B.R. 173, 177 (Bkrtcy.S.D.N.Y.1983). *See also Prudence Corp. v. Ferris,* 323 U.S. 650, 654, 65 S.Ct. 539, 541, 89 L.Ed. 528 (1945). The questions presented by the dismissal of the reorganization after confirmation of the plan have received little or no prior judicial consideration according to the briefing of the parties. Under prior corporate reorganization legislation it has been ruled that a dismissal of such a proceeding should generally be given prospective effect. *In re Technical Marine Maintenance Co.,* 169 F.2d 548, 553 (3d Cir.1948); 11 *Remington on Bankruptcy* (1961 Revision) Sec. 4669. In the cited case it was held to be error to dismiss *ab initio,* thereby interfering with intervening rights.

---

**2.** Omni Electrical Construction, Inc. is unrelated to debtor Omni.

**3.** Special circumstances supporting this inference are that Judge Stewart offered to hear the Government's claim for reinstatement of its

lien, the Government indicated it would seek such relief, and the dismissal occurred after the Government had failed to take action in response to the court's invitation.

The Government places its greatest reliance on *In re Nash*, 765 F.2d 1410 (9th Cir.1985). In that case it was said that dismissal of a proceeding under Chapter 13 of the Code "effectively vacated" a confirmed plan. 765 F.2d at 1413. A Chapter 13 Trustee was held liable to the dismissing debtors for distributing to creditors (in accordance with an approved plan) receipts from wage earnings acquired both before and after the voluntary dismissal of the proceeding, and in the possession of the Trustee after the dismissal. One member of the panel, in partial dissent, would have required the Trustee to pay to the debtors wage earnings received after dismissal but not such sums received before dismissal and thereafter distributed in accordance with the plan. The *Nash* opinion is somewhat favorable to the Government in quoting from a per curiam opinion of the same circuit that the revesting of property upon dismissal, generally mandated by 11 U.S.C. § 349(b)(3), " 'obviously contemplates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy.' " 765 F.2d at 1414, quoting from *In re Income Property Builders, Inc.*, 699 F.2d 963, 965 (9th Cir.1982). A review of both cases indicates that the reference to security interests was clearly dicta.

The Bank contends that *Nash* is not applicable because Chapter 13, unlike Chapter 11, allows debtors a continuing option to dismiss their cases. Holding a debtor bound by a confirmed plan (as provided by 11 U.S.C. § 1327(a)) would thus be inconsistent with the escape hatch of dismissal, provided in 11 U.S.C. § 1307(b). While this distinction appears to be sound, and is consistent with the reasoning of the *Nash* court (765 F.2d at 1413) a more fundamental difference is suggested by the *Technical Marine* case, and by the partial dissent in *Nash*. Retroactive divesting of settled

rights is not generally provided by the law. *Nash* would be more clearly in point if the debtors in that case sought to recover back payments made to creditors pursuant to the plan *prior* to dismissal of the proceeding. It seems wholly unlikely debtors would have been successful in such an effort. *See, e.g., In re Waugh*, 82 B.R. 394, 399–400 (Bkrtcy.W.D.Pa.1988); *In re Redick*, 81 B.R. 881, 887 (Bkrtcy.E.D.Mich. 1987). The partial dissent in *Nash* is also persuasive in treating the plan as terminated in its future operations, but appropriately enforced insofar as funds were received by the Trustee prior to dismissal of the proceeding.

I acknowledge that it seems somewhat counterintuitive to conclude that the Government lost the effect of any tax lien by tacitly consenting to the debtor's plan, and cannot somehow recoup its status as a secured creditor when the debtor fails to consumate the plan.[4] The parties agree, however, that the effect of a dismissal is set forth in § 349, and I conclude that it is not possible to find a basis in that section for restoring the lost lien rights.

Generally a dismissal reinstates "any lien voided under Section 506(d)" of the Code. 11 U.S.C. § 349(b)(1)(C). Without retracing all steps necessary to the voiding of a lien under § 506(d), it seems sufficient to state that the Government's loss of its lien, pursuant to the confirmed plan, was not caused by circumstances referred to in the cited statute, and the Government makes no contention that it temporarily lost its rights by reason of § 506(d). *See In re Newton*, 64 B.R. 790 (Bkrtcy C.D.Ill.1986).

The Government's alternate source of reinstatement of its lien is similarly insufficient. Contrary to the dicta in Ninth Circuit cases, § 349(b)(3) does not in wording appear to relate to security interests, and the specific reference to reinstatement of lien rights in the other subsection makes it

---

**4.** If some rationale is needed, apart from the wording of the Code, it would seem that the administration of bankruptcy estates requires relatively quick, practical solutions, upon which third parties like the Bank have a right to rely. There is a very strong policy against untimely revocation *ab initio* of a confirmed plan. *In re Emergency Beacon Corp.*, 48 B.R. 356, 359–61 (Bkrtcy.S.D.N.Y.1985). Moreover, the Govern-

ment seems to concede that if the reorganization case had been converted to Chapter 7 rather than dismissed, it would have had no statutory argument for reviving its lien. Doc. 6, p. 9. Why a dismissal should work a different result is unexplained, and I can think of no good reason for divergent results in the present context.

unlikely that Congress meant to deal with lien rights in the cited section.[5] The Bank appears to be correct, moreover, in asserting that the revesting of property from the estate to the entity previously holding it occurred before the dismissal, when the plan was confirmed. 11 U.S.C. § 1141(b). Revesting "includes only that property left in the estate at the time of dismissal." *In re Searles*, 70 B.R. 266, 270 (D.R.I.1987). Therefore the property revesting provision had no impact under the circumstances of this case.

No other provision of the section governing the effect of dismissals seems to offer any substantial hope to the Government. *See Florida Peach Corp. v. Commissioner*, 90 T.C. No. 41, ¶ 90.41 PH TC (1988). Under the circumstances, therefore, the *res judicata* effect of the confirmed plan, unappealed by the Government, and the Government's failure to take any action in bankruptcy to obtain restoration of its lien rights, must be adjudged fatal to its claim here.

Defendant's motion for summary judgment is GRANTED and judgment will be entered in favor of defendant. SO ORDERED.

---

**5.** Contrary authority is noted. *In re Grove*, 27 B.R. 866 (Bkrtcy.D.Kansas 1983). Judge Pusateri relied, however, on a gloss to the statute in Collier, referring to reinstatement of "all property rights," that does not appear in the 1988 edition under ¶ 349.03, and he seems not to have been asked to consider the statutory handling of security interests in another subsection.