**In re PENNSYLVANIA IRON AND COAL COMPANY, INC., Debtor.**

**PENNSYLVANIA IRON AND COAL COMPANY, INC., Plaintiff,**

v.

**Rodney GOOD, d/b/a Good Trucking Company, Defendant.**

**Bankruptcy No. 3–83–00087.**
**Adv. No. 3–84–0238.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 30, 1985.

See also 40 B.R. 918.

Ira Rubin, Dayton, Ohio, for plaintiff.

Keith A. Saeks, Dayton, Ohio, for defendant.

## DECISION AND ORDER

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon the complaint of plaintiff, Pennsylvania Iron and Coal Company, Inc. seeking the turnover of a Converto trailer pursuant to 11 U.S.C. § 542 from defendant, Rodney Good, d/b/a Good Trucking Company. Also before the court is defendant's counterclaim which requests judgment for the cost of repairs, maintenance and storage of the trailer.

At trial on the matter, plaintiff called no witnesses, but relied solely on stipulations set out by the parties in a pretrial order. From these stipulations it appears that—

1) Plaintiff is the owner of the Converto trailer;

2) The Converto trailer is in the possession of defendant;

3) Plaintiff demanded the return of the trailer from defendant;

4) Defendant has refused to return the trailer to plaintiff.

The stipulations establish a prima facie case that plaintiff is entitled to possession of the trailer under 11 U.S.C. § 542.

The remaining issue is whether defendant is entitled to the cost of certain repairs

and maintenance he provided for the trailer and the cost of storing the trailer. In addition, defendant claims a lien on the trailer for these items.

## FACTS

Evidence supporting defendant's counterclaim was presented through testimony of the defendant. Plaintiff presented no rebuttal witnesses. The court finds the defendant to be a highly credible witness and the following recitation of facts is based primarily upon defendant's testimony.

Defendant, Rodney Good, who is engaged in the business of transporting scrap metal and materials, has had business dealings with plaintiff since 1979. The instant matter concerns a verbal arrangement, entered into in approximately November of 1981, under which defendant was to use his tractor to haul plaintiff's Converto trailer to collect scrap material. The Converto trailer, which is a form of dump trailer used to pick up and unload containers at factory sites, is thirty-two feet long and weighs approximately 25,000 to 30,000 pounds.

In making the verbal agreement with plaintiff, defendant negotiated with Stanley Katz, who was the vice-president of the plaintiff at that time. According to defendant, it was agreed that defendant would use the Converto trailer so long as the arrangement was mutually beneficial to the parties. No length of time was specified in the agreement and nothing was put in writing. The basic compensation for defendant's services was based upon a mileage/ton ratio. Upon termination of the agreement, defendant was to be reimbursed by plaintiff for repairs and maintenance provided by defendant to the Converto trailer during the course of the agreement.

From November of 1981 until approximately January 18, 1983, when plaintiff filed a voluntary petition under Chapter 11 of the Bankruptcy Code, defendant performed under the agreement and plaintiff promptly paid him on a weekly basis.

In early January of 1983, defendant found the gates of plaintiff's place of business closed. Two or three days later defendant contacted Stanley Katz by telephone to determine the status of plaintiff's operations and what should be done with the Converto trailer. According to defendant, Mr. Katz informed defendant to "just keep it [the Converto trailer] for right now. We're having a little trouble with business partners. Just keep it with you and when we get this resolved we'll call you back and you can start hauling again. You just keep it stored for me until then."

Later defendant learned that plaintiff had filed a petition in bankruptcy.

As a result of his conversation with Stanley Katz, defendant took the Converto trailer to his place of business and stored it inside his building to protect it from the weather.

Defendant introduced exhibits which demonstrate that he expended approximately $6,100.00 for repairs and maintenance to the Converto trailer. Of this amount, approximately $5,100.00 is attributable to pre-petition repairs and maintenance.

Regarding storage charges, defendant testified that if he had to rent his place of business for storage, it would be at a rate of $30.00 to $35.00 per day for a semi-trailer and that the Converto trailer is a semi-trailer.

On cross-examination defendant testified that the oral agreement with plaintiff was for an indefinite period. His testimony also reveals confusion as to whether the agreement was actually for a period of three years, subject to extension.

Also on cross-examination, defendant stated that Stanley Katz did not specifically request defendant to "store" the Converto trailer, but rather told defendant to "keep it." Defendant further testified that the words "keep it" and "store it" meant the same thing to him.

Defendant admitted that he received a notice that plaintiff had filed a petition in bankruptcy and that he promptly took the

notice to his attorney. He also admitted that it was not until at least a year and a half after plaintiff's petition was filed, that he informed plaintiff of any money owed for repairs, maintenance or storage and that his failure to communicate this information to plaintiff was due to his belief that the oral agreement was still in effect.

Defendant conceded that he received a copy of plaintiff's disclosure statement in 1984 and although he did not understand it, he did know that plaintiff's bankruptcy case was nearing a close.

At no time did defendant file a proof of claim, explaining his inaction on the basis that he believed the oral agreement was still valid and that he would begin hauling the Converto trailer for the plaintiff in the future.

During the trial plaintiff moved that the court take judicial notice of plaintiff's bankruptcy file in its entirety. Plaintiff's motion was granted and the following items of that file are specifically noted:

1) Plaintiff's "Statement of Financial Affairs" listed the Converto trailer as being in the possession of Good Trucking and indicated it was "not released due to our failure to pay";

2) Plaintiff listed defendant as a creditor having an unsecured claim and without priority in the amount of $14,392.54 for "service" during 1982;

3) Plaintiff's "Amended Plan of Reorganization" essentially placed all non-priority allowed unsecured claims in Class 7 and provided that Class 7 was to be paid a dividend of 15%;

4) The "Amended Plan of Reorganization" also provided that all executory contracts not assumed prior to confirmation were to be deemed rejected;

5) Plaintiff's disclosure statement provided that confirmation of the plan would constitute a rejection of executory contracts with the exception of leases with Rejas Investments;

6) On May 21, 1984 this court confirmed plaintiff's plan of reorganization. The confirmation order provided that Class 7 of plaintiff's creditors were to be paid a dividend of 25% in four installments;

7) The parties stipulated in a pretrial order "that the plaintiff previously employed defendant to haul the trailer."

## CONCLUSIONS OF LAW

To determine the rights and liabilities of these parties it is necessary to isolate the events which occurred prior to the confirmation of plaintiff's plan of reorganization from those which took place subsequent to confirmation.

### A. PRE–CONFIRMATION PERIOD

An examination of the relationship that existed between the parties from November of 1981 until January of 1983 as evidenced by defendant's unrebutted testimony, the bankruptcy schedules of plaintiff, and the parties' pretrial order, clearly reveals that there was an express oral contract between plaintiff and defendant. The parties agreed that defendant would haul the Converto trailer to pick up scrap material and defendant would be paid on the basis of a mileage/ton ratio. It was also agreed that upon termination of the contract defendant would be reimbursed for repairs and maintenance provided by him. Up until the time plaintiff's petition in bankruptcy was filed in January of 1983, it appears that both parties performed according to the contract without problems.

Plaintiff maintains, however, that defendant cannot enforce the contract because the Statute of Frauds requires a contract, not to be performed within one year, to be in writing. Plaintiff further contends that even if the contract is enforceable, Ohio law does not grant a lien to defendant on the Converto trailer. Whether or not this view of Ohio law is correct is rendered immaterial by the Bankruptcy Code. Assuming *arguendo* that defendant could recover on the contract and establish the existence of a lien of some type on the Converto trailer, 11 U.S.C. § 1141 precludes defendant from presently altering

his treatment under the plan and from maintaining or enforcing any pre-confirmation lien on the Converto trailer.

On May 21, 1984 this court confirmed plaintiff's plan of reorganization. The confirmation order generally provided for unsecured creditors to receive 25% of their claims in four installments.

Of critical importance in the instant proceeding is the effect of that confirmation order. The version of 11 U.S.C. § 1141 in effect at the time of confirmation of plaintiff's plan provided that upon confirmation the following occurs:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor or equity security holder of, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan *vests all of the property of the estate in the debtor.*

(c) After confirmation of a plan, the property dealt with by the plan is *free and clear of all claims and interests of creditors,* of equity security holders, and of general partners in the debtor, except as otherwise provided in the plan or in the order confirming the plan.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from *any debt that arose before the date of such confirmation,* and any debt of a kind specified in section 502(g), 502(h) or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; [Emphasis Supplied]

The effect of these provisions are far-reaching. After confirmation of a chapter 11 plan, a creditor's lien rights are only those granted in the confirmed plan. A creditor no longer can enforce its pre-confirmation lien rights. *In re American Properties, Inc.,* 30 B.R. 239, 246 (Bankr.Kan.1983).

Perhaps most importantly, the confirmation of the plan discharges the debtor from 'any debt that arose before the date of such confirmation,' ... whether or not a proof of claim has been filed or the plan accepted by the creditor. *In re Nevada Emergency Services, Inc.,* 39 B.R. 859, 861 (Bankr.Nev.1984).

Section 1141(a) of the Code has the same effect as Sections 224(1), 367(1) and 473(1) of the Bankruptcy Act in that a plan is binding upon all parties once it is confirmed and all questions which could have been raised pertaining to such plan are *res judicata.* 5 *Collier on Bankruptcy* ¶ 1141.01[1] at 1141–5 (15th ed. 1985).

Therefore, when this court confirmed plaintiff's plan of reorganization, defendant became bound by the provisions of that plan. As a result the Converto trailer vested in the plaintiff, free and clear of any lien defendant may have possessed at the time and the debt owed to defendant prior to confirmation of the plan was discharged.

In response to the effects of 11 U.S.C. § 1141, defendant requests the court to impose an array of equitable remedies to alleviate the consequences of that statute. However, defendant's actions, more specifically his inaction, do not persuade this court to hasten to the assistance of defendant.

For over a year and a half defendant elected to ignore this court's proceedings regarding plaintiff's reorganizational efforts. Defendant received notice that plaintiff had filed its petition and he received a disclosure statement, which out-

lined the plan's treatment of creditors and the rejection of certain executory contracts. He was also aware that the reorganizational aspects of the case were coming to a close. Yet he did nothing.

When a creditor disagrees with the proposed treatment of his claim in a reorganization case, it is incumbent upon him to come forward and inform the court. There is simply no other effective method for a bankruptcy court to become aware that a creditor objects. This court does not know why defendant failed to file some type of objection to the confirmation of plaintiff's plan, but the defendant sets out in his post-trial memorandum the following rational for not filing a proof of claim:

> [T]o have timely filed a proof of claim in the Chapter 11 proceedings, that claim would have either been denied; proved as an unsecured creditor and defendant denied recovery for storage fees and allowed recovery of only ten cents on the dollar for the actual money expended to enhance the value of the Converto ... [p. 5]

We observe that defendant fails to explain how his plight was any different from other similarly situated creditors. What is it about defendant's circumstances that warrant equitable treatment from this court? Inherent in any bankruptcy reorganization, whether by way of composition or extension, is the fact that the original contractual expectations of creditors will not be fulfilled. A creditor's dissatisfaction with treatment under the provisions of the Bankruptcy Code is obviously an insufficient justification for remaining silent and standing aloof from the bankruptcy proceedings.

It appears that the unarticulated premise underlying defendant's position is that the mere passage of time has somehow elevated the status of his claim and that the court should at this time apply equity to uphold his purported enhanced status.

Such is not the case. *If* defendant's claim was unsecured prior to confirmation, it remains so today.

Plaintiff listed defendant in its schedules as having an unsecured claim and this listing constituted prima facie evidence of the validity and amount of defendant's claim pursuant to BANKR.R. 3003(b)(1). "It is the creditor's responsibility to determine if the claim is accurately listed." Advisory Committee Note to BANKR.R. 3003. If the defendant believed his debt was inaccurately scheduled, he should have filed a proof of claim which would have superseded plaintiff's scheduling of his claim, BANKR.R. 3003(c)(4), or used other procedures for objecting to plaintiff's treatment of his claim.

■ Had defendant in some timely manner objected to his treatment in the reorganization plan, the court *may* have found that defendant was entitled to a lien on the Converto trailer for repairs and maintenance or have found that defendant should have been granted an administrative expense under 11 U.S.C. § 503 for storage of the trailer.

However, defendant never came forward and as a result is bound by this court's confirmation order. Under the circumstances we are unable to discern the necessity or desirability of imposing an equitable remedy in favor of the defendant for the period preceding confirmation of plaintiff's plan.*

## B. POST–CONFIRMATION PERIOD

Upon the confirmation of plaintiff's plan the legal relationship between plaintiff and defendant was altered.

> It is clear that upon confirmation of a plan of reorganization, property of the bankruptcy estate vests in the reorganized debtor, a new entity, and administration of the estate ceases. *United*

---

* Defendant's claim was scheduled by plaintiff in the amount of $14,392.54. The court has not been informed of the calculations underlying this figure. We assume it includes amounts for work, repairs, maintenance, storage and any perceived damages arising from the termination of the contract. We merely note that all parties, including the plaintiff, are now bound by that amount as representing defendant's pre-confirmation claim.

*States v. Redmond,* 36 B.R. 932, 934 (D.C.Kan.1984).

[T]he debtor is not entitled to a permanent umbrella shielding it from all law suits while it makes its payment under the plan of arrangement. The order of confirmation marked the commencement of the period when a debtor was weaned from dependence on the bankruptcy court's injunctive powers so as to stand on its own feet with respect to post-confirmation matters. *In re Morgan and Morgan, Inc.,* 24 B.R. 518 (Bankr.S.D.N.Y.1982).

■ Debts which accrue subsequent to confirmation of a debtor's plan are not discharged by the plan. Originally, Stanley Katz informed defendant to "keep" the trailer, which defendant understood to mean "store" the trailer. Under the circumstances of this case, we find defendant's understanding to be reasonable and find that plaintiff, therefore, obligated itself to pay storage charges. However, any storage charges which arose during the pre-confirmation period were subject to the confirmation order.

It is noted that although plaintiff rejected its executory contract with defendant, plaintiff's behavior was not consistent with this rejection because it made no formal demand for the trailer until August of 1984. Rather than plunge into the murky topic of whether plaintiff somehow revived the previously rejected contract or acquiesced in its continuance, we choose to ground the treatment of defendant's post-confirmation claim on equitable principles.

In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. *Hummel v. Hummel,* 133 Ohio St. 520, 525; 14 N.E.2d 923, 925 (Ohio 1938). A quasi contract is not the result of a meeting of the minds but is implied and imposed by law without the consent of the obligor to prevent the obligor from enjoying benefits which in equity and good conscience he is not entitled to retain. *Hughes v. Oberholtzer,* 162 Ohio St. 330; 123 N.E.2d 393, 394 (Ohio 1954).

Just as we have faulted the actions of defendant in this matter, we must also observe that plaintiff's conduct has not been commendable. It too has not actively pursued its remedies under the Bankruptcy Code. For a period of twenty months plaintiff acquiesced in the retention and storage of its Converto trailer by defendant. No demand was made for its return. Yet plaintiff contends no storage charges are due. As mentioned, the 17 month period prior to confirmation is covered by the confirmation order. But as to the post-confirmation period this court has no difficulty in imposing a contract to pay for the reasonable value of storing the Converto trailer. The plaintiff derived benefits by having its trailer protected from both the weather and potential harm by third parties. To deny the defendant recovery for the storage charges for the post-confirmation period would be unjust and unconscionable.

When one has received money, goods, or benefits from another, justice and equity demand that he should pay therefore, and the law will, if necessary, imply a promise to that effect. *Towsley v. Moore,* 30 Ohio St. 184, 194 (S.Ct.Comm.1876).

Therefore, defendant will be permitted to recover storage charges for the period from the confirmation of plaintiff's plan to the date plaintiff filed its complaint for turnover on August 24, 1984 for an amount of $2820.00 (94 days × $30/day).

For the foregoing reasons it is hereby ORDERED, ADJUDGED AND DECREED that defendant be granted judgment on its counterclaim in the amount of $2820.00 and further it is ORDERED pursuant to 11 U.S.C. § 105 that upon receipt of said sum from plaintiff, defendant release the Converto trailer to plaintiff.