**In re Gary E. HENDERBERG, Janice M. Henderberg, Debtors.**

**Bankruptcy No. 87–00041.**

United States Bankruptcy Court, N.D. New York.

June 12, 1989.

**408**

Brett W. Martin, Utica, N.Y., for debtors.

Paul Pozefsky, Asst. County Atty., Utica, N.Y., for County of Oneida.

Paul Skavina, Asst. Corp. Counsel, Rome, N.Y., for City of Rome.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court has before it an objection to tax claims.

### FACTS

Gary E. and Janice M. Henderberg ("Debtors"), dairy farmers on the southwest outskirts of Rome, County of Oneida, New York, filed a voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1989) ("Code"), on January 13, 1987. On March 9, 1987, Debtors filed schedules of assets and liabilities which, in Schedule A–1, listed the Rome City Treasurer ("Rome") and the Oneida County Commissioner of Finance ("Oneida County" or "the County") as having priority tax claims in the amount of $800.00 and $11,000.00 respectively. Both municipalities were listed on the bankruptcy mailing matrix.

On July 7, 1987, the claims bar date, Rome filed a priority proof of claim in the amount of $7,098.97 for seven properties, specifically deleting that part of the form referring to the claim's status as secured while noting tax liens. It attached copies of tax search certificates, dated March 18 and 24, 1987, "covering unpaid city and school taxes, special assessments and water rents" for the years 1985 through 1987 and 1987 County taxes, with interest and penalties accruing through the month of March 1987. Oneida County did not file any proof of claim.

The Debtors filed their Chapter 11 Disclosure Statement and Plan on June 7, 1988. The Disclosure Statement, after a hearing on notice to all creditors and parties in interest on April 15, 1988, was approved by Order entered September 1, 1988.

Under Article II of the Plan, entitled "Classification of Claims" and containing eight classes, the tax claims of Rome and Oneida County were listed in Class 1 as "[a]llowed real property tax claims having priority under the provisions of 11 U.S.C. section 507(a)(7)(B)." Class 8 under the Plan, entitled "Allowed General Unsecured claims," was comprised of "all unsecured creditors, other than priority Class 1 creditors and the Class 7 lessor" and included "real property tax claims not accorded priority status, if any."

Article 1 defined "Allowed Claims" as "claims listed by the debtors in the schedules filed with the court which are not identified as disputed, contingent, or unliquidated, or claims properly filed by creditors with the court to which an objection has not been filed, or claims approved and allowed by a final order of the court."

Article III of Debtors' Plan provided that the allowed priority claims under Code § 507(a)(7)(B) of Oneida County and Rome for pre-petition property taxes of approximately $11,000.00 and $6,988.24, respectively, would "be paid in full with interest at the annual rate of nine per cent (9%) from the Confirmation Date" in monthly increments of $570.00 and $360.00, respectively, commencing on the twenty-fifth day of the eighteenth month after the entry of a final confirmation order. Aside from proposing full payment of unclassified administrative claims to commence on or within twenty-five days of the Confirmation Date, the Plan set forth payment to Classes 2 through 6, composed of holders of allowed consensual secured claims who were to retain their liens until full payment, to commence in the sixth month following the entry of a final order confirming the Plan. Class 8 was to receive its twenty percent distribution, with no accruing interest, in three annual installments beginning on the first day of the thirteenth month after the entry of a final order confirming the Plan.

Article V of the plan declared that "[t]he provisions of the Plan shall become effective and binding on the date of entry of a final order confirming the Plan." It further provided for the extinguishment, discharge and cancellation of all judgment liens, "all mortgages, security interests and similar consensual liens" upon the Plan's confirmation.

Indicating an unpaid principal amount of $6,988.24, Rome voted for acceptance of the Debtors' Plan on October 13, 1988.[1] Oneida County neither voted for or against the Plan, nor filed an objection to the Plan. After a hearing on October 21, 1988, noticed to all creditors and parties in interest, the Court issued an Order of Confirmation of the Debtors' Chapter 11 Plan the same day. No appeals were filed.

Pursuant to Article V of the Plan, in which the Debtors reserved the right to object within sixty days of the Confirmation Date to any claim filed or listed in

their case, the Debtors filed an Objection To Tax Claim Of The City Of Rome and County Of Oneida ("Objection") on October 28, 1988 pertaining to seven parcels of real property for the years 1985 through 1987. In their Objection at paragraph eleven, the Debtors stated that Rome's claim of $7,098.97 should be modified so that $6,276.25 would receive Class 1 priority status, $599.09 would be included in Class 8, and to expunge the remaining $224.33, representing a post-petition penalty in violation of Code § 362(a).[2]

Paragraphs twelve, thirteen and fourteen of the Debtors' Objection further provided that Oneida County's claim for $11,000.00 should be modified so that only $4,395.44 would maintain Class 1 status for 1986 taxes, with $4,421.08 listed in Class 8 for 1985 taxes, and the remainder of the claim —penalties, interest, and advertising costs—excluded since voided by an Order of this Court, entered October 17, 1988, as violative of the automatic stay, unless the County provided proof to the contrary prior to the hearing. The Debtors also excluded 1987 County taxes due to their inclusion by Rome in its proof of claim and attached a breakdown of each municipality's tax claims by parcel and category.

Rome and Oneida County disputed the Debtors' contentions and filed answering affidavits on November 23, 1988 and November 25, 1988, respectively. After a hearing November 29, 1988, decision was reserved, memoranda of law were to be filed, and the matter was finally submitted on January 20, 1989.

## ARGUMENTS

The Debtors argue that Rome and Oneida County were treated as unsecured priority creditors pursuant to Code § 507(a)(7)(B) in the Chapter 11 Plan and, therefore, any statutory liens which were created pre-petition pursuant to New York Real Property Tax Law § 902 (McKinney

---

1. Page six of the Debtors' Disclosure Statement noted a payment of $110.73 to Rome, which reduced the city's claim to $6,988.24.

2. There is an unexplained seventy cent discrepancy since the sum of the three figures amounts to $7,099.67.

1972 & Supp.1989) ("NYRPTL") did not survive confirmation of the Plan and its *res judicata* effect. The Debtors maintain that the rights of the creditors are defined within the terms of the confirmed Plan and only treated Rome and Oneida County in two classes. Under the Plan, priority tax claims which arise under Code § 507(a)(7)(B) are designated as Class 1 claims and are scheduled to be paid in full, while real property tax claims which do not fall under Class 1, are relegated to Class 8 and a twenty percent distribution.

As noted, the Debtors further claim that the penalties claimed by Rome were assessed post-petition and, therefore, are void under the automatic stay provision found in Code § 362(a), as are those portions of Oneida County's claim comprising penalties, interest, and advertising costs and upheld by an Order.

In its answering affidavit, Rome asserted that it had a statutory tax lien on the Debtors' real property pursuant to NYRPTL § 902 which could only be avoided under Code § 545. Thus, Rome maintained that the confirmation of the Plan could not affect its statutory tax lien, which survived whether or not provided for in the Plan, since it must either formally or expressly waive, cancel or impair its lien. Therefore, the Debtors should pay the full amount of the claim listed in the Plan.

Rome further contended that it relied on the representations in the Disclosure Statement and Plan that its claim would be paid in full in voting to accept the Plan. It sought an order declaring that its tax lien to secure real property taxes of $6,988.24, plus interest at nine percent, continued until repayment of those taxes.

In its answering affidavit, Oneida County stated simply that its claim under the Plan, which totalled $11,000.00, was an estimate by the Debtors, and that the sum actually due and owing to the County by the Debtors was in the amount of $17,549.33. The County of Oneida did not contest denial of its status as lien creditor or the bifurcation of its claim between Classes 1 and 8.

## QUESTIONS PRESENTED

I. What is the effect of the confirmation of a Chapter 11 Plan on the status of pre-petition tax liens which are treated as both unsecured and priority unsecured claims under the Plan, where the alleged lien creditors were given notice of all of the bankruptcy proceedings leading up to and including confirmation of the Plan, and did not object?

II. Can Debtors bifurcate tax claims post-confirmation under the terms of their Chapter 11 Plan?

## JURISDICTION

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C.A. §§ 1334(a), 157(a), 157(b)(1), and 157(b)(2)(B), (K), and (O) (West Supp.1989). This motion was decided in accordance with Bankruptcy Rules ("Bankr.R.") 3003, 3007, 3020, 7052 and 9014.

## DISCUSSION

The essential dispute in this case involves the Plan's treatment of the claims of Rome and the County and the Debtors' ability to subsequently object to and bifurcate the tax claims seven days after confirmation, as reserved in Article V of the Plan itself. Any coinciding determination of the Debtors' tax liability is within the jurisdiction of this Court. *See* Code § 505(a); *Brandt–Airflex Corp. v. Long Island Trust Co., N.A. (In re Brandt–Airflex Corp.)*, 843 F.2d 90, 93–94 (2d Cir.1988).

### I.

In a Chapter 11 case, "[s]ubject to compliance with the requirements of due process under the Fifth Amendment, a conformed [sic] plan of reorganization is binding upon every entity that holds a claim or interest even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan, or is not entitled to retain an interest under such plan." 5 L.P. King COLLIER ON BANKRUPTCY ¶ 1141.01 at 1141–6 (15th ed. 1989).

In this case, neither Oneida County nor Rome, holders of lien interests in the Debtors' real property pursuant to NYRPTL § 902, *see, e.g.,* Code §§ 101(33), 361, 363(f), 541, dispute the fact that they had notice of the Debtors' Chapter 11 case and the proceedings within. Thus, Rome's affirmative vote and the County's inaction with respect to the Debtors' Plan does not alter the identical impact of the confirmation on both, especially inasmuch as neither appealed the Order of Confirmation.

■ Code § 1141(a) states in pertinent part that "the provisions of a confirmed plan bind the debtor ... and any creditor, ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan." Therefore, this Court holds that the Order of Confirmation adopting the terms of the Plan is a final judgment for purposes of *res judicata* on all matters relevant to the confirmation, whether raised or not, and hence, binding upon Rome and Oneida County. *See Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1050 (5th Cir.1987); *Virgin Islands Bureau of Internal Revenue v. St. Croix Hotel Corp.,* 60 B.R. 412 (D.Virgin Islands 1986); *In re White Farm Equipment Co.,* 38 B.R. 718, 724 & n. 13 (N.D.Ohio 1984); *In re Monroe Well Service, Inc.,* 80 B.R. 324, 334 (Bankr.E.D.Pa.1987); *In re Newport Offshore, Ltd.,* 78 B.R. 383, 386 (Bankr.D.R.I.1987); *Crabtree v. United States (In re Crabtree),* 76 B.R. 208, 210 (Bankr.M.D.Fla.1987); *Board of County Commissioners v. Coleman American Properties, Inc. (In re American Properties, Inc.),* 30 B.R. 239, 246 (Bankr.D.Kan. 1983). *See also Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

The binding effect of a confirmed Chapter 11 Plan on liens has been the subject of extensive, though somewhat unsettled, case law. In *Minstar, Inc. v. Plastech Research, Inc. (In re Arctic Enterprises, Inc.),* 68 B.R. 71 (D.Minn.1986), cited by the Debtors, although the creditor had a consensual lien on debtor's property, its claim was treated as unsecured under the provisions of the confirmed Chapter 11 plan.

Noting a split of authority, the district court nonetheless held that the creditor's lien was dissolved as the result of the effect given to a confirmed plan by virtue of Code § 1141(c), stating that "[a]fter confirmation of a chapter 11 plan, a creditor's lien rights are only those granted in the confirmed plan. A creditor no longer can enforce its pre-confirmation lien rights ..." *Id.* at 79 (quoting *In re American Properties, Inc., supra,* 30 B.R. at 246). In addressing the binding effect of a confirmed plan, the court observed that "[i]n a chapter 11 case, ... the debtor and creditors naturally look to the plan of reorganization as the *final decree* of the rights of the parties." *Id.* at 80. [emphasis added].

Similarly, the court in *In re Penn–Dixie Industries, Inc.,* 32 B.R. 173 (Bankr.S.D.N. Y.1983), confirmed a debtor's amended Chapter 11 plan, which incorporated the terms of an earlier tax order providing for and proposing payment over six years of pre-petition real property tax claims originally secured by liens and held by Iowa counties, in the absence of any objection by the counties. In spite of the tax order and the order confirming the amended plan, to which the counties neither objected nor appealed from, the counties sought to sell debtor's real property post-confirmation and when enjoined in an adversary proceeding, moved to reform the order confirming the plan, claiming status as lien creditors.

The *Penn–Dixie* court noted that only one of the counties had filed a proof of claim and that it had been untimely and identified as "priority" with the word "secured" stricken. The court held that the counties were "now estopped from seeking to revise the payment scheme." *Id.* at 179. The court noted that the counties had not objected to the order confirming the plan and that "[t]o allow the counties to go forward with their motion now ... would defeat the time-honored doctrine of *res judicata.*" *Id.* at 177.

In *Pennsylvania Iron and Coal Co., Inc., v. Good (In re Pennsylvania Iron and Coal Co., Inc.),* 56 B.R. 492 (Bankr.S. D.Ohio 1985), the defendant claimed he had a lien on the debtor's dump trailer. Under

the debtor's confirmed plan however, the defendant, who received notice of the petition and a copy of the disclosure statement yet neither filed a proof of claim nor lodged an objection to confirmation, was treated as an unsecured creditor without priority. The court held that the debtor's claimed lien was relinquished under the plan, stating that "11 U.S.C. § 1141 precludes defendant from presently altering his treatment under the plan and from maintaining or enforcing any pre-confirmation lien." *Id.* at 494–95.

The *Pennsylvania Iron* court also observed that "[i]nherent in any bankruptcy reorganization ... is the fact that the original contractual expectations of creditors will not be fulfilled." *Id.* at 496. Upon confirmation, therefore, the "defendant became bound by the provisions of that plan." *Id.* at 495. *See also In re American Properties, Inc., supra,* 30 B.R. at 239; *In re Fischer,* 91 B.R. 55 (Bankr.D.Minn.1988); Hopper, *Confirmation of a Plan Under Chapter 11 of the Bankruptcy Code and the Effect of Confirmation on Creditor's Rights,* 15 IND.L.REV. 501, 514–15 (1982).

■ The Court is of the view that a confirmed Chapter 11 plan defines the creditors' claims and any pre-confirmation rights of the creditors exist only to the extent that they are accounted for in the plan.

In the present case, the Plan listed Oneida County and Rome as the two sole creditors in Class 1, holding claims defined as "allowed priority claims under 11 U.S.C. 507(a)(7)(B) for pre-petition property taxes" and then in Class 8 of the Plan, entitled "Allowed General Unsecured claims," which included "real property tax claims not accorded priority status, if any."

Code § 507 lists in descending order seven tiers of priority claims against a debtor's estate and thus establishes a statutory mid-point between secured claims, governed by Code § 506, and general unsecured claims within the sequence of distribution participation. *See In re Parr Meadows Racing Ass'n, Inc.,* 92 B.R. 30, 36 (E.D.N.Y.1988); *In re Structurlite Plastics, Corp.,* 91 B.R. 813, 816 (Bankr.S.D.

Ohio 1988). "Priority is designed to assure payment, if possible, to certain classes of claims by requiring that they be paid before others are satisfied." 3 COLLIER ON BANKRUPTCY, *supra,* ¶ 507.03 at 507–19.

A plain reading of Code § 507(a) demonstrates that the term priority is mutually exclusive from that of "secured." Accordingly, Code § 507(a)(7) delineates seven specific categories of allowed *"unsecured* claims of governmental units" and implicitly acknowledges the existence of those allowed unsecured claims of governmental units not entitled to priority, which would share *pro rata* with holders of allowed general unsecured claims.

Thus, the Debtors' Plan could provide for the payment of the claims of Rome and Oneida County only to the extent that they were treated in either Class 1 or Class 8, and need not have included any provision for the taxing authorities to retain their statutory liens. This the Plan did and upon its confirmation "the fixing of the allowed amount of claims ... establish[es] new rights and obligations and permanently supplant[s] those entered into pre-petition." *In re Valley Park Group, Inc.,* 96 B.R. 16, 24 (Bankr.N.D.N.Y.1989).

The Court acknowledges authority to the contrary holding that a lien creditor's status cannot be affected by a bankruptcy proceeding, but a close reading of the seminal case does not lead to the conclusion that it conflicts with the Court's conclusion herein.

The Seventh Circuit Court of Appeals in *In re Tarnow,* 749 F.2d 464 (7th Cir.1984), concluded that the bankruptcy and district courts erred when they permitted a Chapter 11 debtor to extinguish the lien of a pre-petition secured creditor by way of the debtor's motion to expunge the secured creditor's late proof of claim.

The Circuit Court examined Code § 506(d)(1) as it existed prior to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 93–353, 98 Stat. 374 ("BAFJA"), as well as the amendment of that section by BAFJA, and reasoned that "[t]he change was intended 'to make clear

that the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor.' " *Id.* at 467 (quoting S.Rep. No. 65, 98th Cong., 1st Sess. 79 (1983)). The court concluded

> [t]he basis for disallowing the Corporation's claim was not that the Corporation was not a genuine secured creditor of the bankrupt but that its claim against the bankrupt estate—that is, its claim to be an unsecured creditor for so much of Tarnow's debt as could not be realized from the sale of the crops and equipment on which the Corporation had a lien—had been filed too late. ... The validity of the lien was not determined in this case."

*Id.* at 466.

The rationale of *Tarnow, supra,* 749 F.2d at 464, that a secured creditor cannot be deprived of its lien status where the debtor merely moves successfully to expunge its claim for late filing, is grounded upon due process requirements and is supported by Code § 506(d)(2), which simply provides that a creditor's failure to file a claim at all does not affect its lien status. The Court does not take issue with this logic, flowing as it does from a lien's status as a property right to which due process attaches, *see United States v. Security Industrial Bank,* 459 U.S. 70, 75–78 & n. 6, 103 S.Ct. 407, 410–11 & n. 6, 74 L.Ed.2d 235 (1982); Code § 101(33), but observes that *Tarnow* arose solely in the context of proof of claim litigation and had nothing to do with the confirmation of a Chapter 11 plan.

However, the district court in *Relihan v. Exchange Bank,* 69 B.R. 122 (S.D.Ga.1985), did apply the *Tarnow* lien concerns in the context of a Chapter 11 confirmation and affirmed the confirmation of a Chapter 11 plan as modified by the bankruptcy court to provide for the continuation of a pre-petition lien. The district court agreed with the bankruptcy court's refusal to conclude that because the debtor's secured creditor (Exchange Bank) had failed to file a proof of claim, although its claim had been listed in the Debtor's schedule as secured in a disputed amount, it had been stripped of its pre-petition lien.

Concluding that Code §§ 506(d)(1) (now § 506(d)(2)) and 1141 do not conflict because the terms "claim" or "interest" in Code § 1141(c) did not include the term "lien," the district court observed that "[d]espite Debtor's citations to the contrary, § 1141 does not act to extinguish valid pre-petition liens." *Id.* at 127. *See also Manistee County v. Reef Petroleum Corp. (In re Reef Petroleum Corp.),* 92 B.R. 741, 746–49 (Bankr.W.D.Mich.1988) (municipality's lien not eliminated by Chapter 11 plan where it's failure to object to the order of confirmation due to prior court approved stipulation which provided for payment of the tax liens from the proceeds of a property sale and validity or priority of its secured priority claim never litigated—*res judicata* inapplicable); *In re Snedaker,* 39 B.R. 41 (Bankr.S.D.Fla.1984) (lien of creditor, who accepted plan, unaffected by confirmation of Chapter 11 plan which made no reference to lien).

The Court concludes that *Tarnow* and its progeny are all factually dissimilar to the instant dispute, focusing primarily as they do on Code § 506(d)(2) which clearly mandates that the failure of a creditor to file a proof of claim does not affect its pre-petition lien. Moreover, the Court is in accord with *In re Arctic Enterprises, Inc., supra,* 68 B.R. at 79–80, which seeks to limit the rationale of the *Tarnow* line of cases to a Chapter 7 context, where the debtor must affirmatively challenge a creditor's lien to extinguish it, *see, e.g.,* Code § 545, because there is no plan of reorganization which will serve the same purpose in the Chapter 11 case. Hence, the Debtors' reliance on Code § 724(b), solely applicable in a Chapter 7 context pursuant to Code § 103(b), is misplaced in this contested matter within their Chapter 11 case.

In support of its position, Rome cites *In re Lloyd Groux,* Case No. 82–11365 (Bankr.N.D.N.Y. Mar. 8, 1983) (Mahoney, J.), where the court held that a debtor's Chapter 13 plan could not be confirmed over the objection of a municipality because it sought to treat the municipality's real

property tax claims under Code § 507(a)(6)(B) (now § 507(a)(7)(B)) as priority rather than as lien claims under NYRPTL §§ 900 and 902.

This Court is of the opinion that *In re Lloyd Groux, supra,* is also factually distinguishable from the instant case. There, the municipality objected to the confirmation of the Chapter 13 plan while here, no such objection to the Plan's treatment of their claims was ever filed by either municipality and, in fact, Rome filed an acceptance of Debtors' Plan on October 13, 1988. Furthermore, Rome's proof of priority claim, filed on July 7, 1987 and containing the reference to "tax liens" does not rise to the level of an objection to Debtors' Plan, which was filed almost a year later on June 7, 1988.

■ This Court must conclude that the Debtors' Plan of Reorganization put both Rome and the County on notice that their pre-petition claims were to be treated either as *priority claims* pursuant to Code § 507(a)(7)(B) or general unsecured claims and that, as such, their liens were being satisfied within the meaning of Code § 1123(a)(5)(E).

Both Rome and the County of Oneida were given opportunity to challenge that treatment by filing an objection to the Plan; neither did.

In the case of Rome, it timely filed a "priority" proof of claim, specifically deleting that portion of the claim form referring to the claim's status as "secured," and then it filed a ballot accepting the Plan. In the case of the County, it filed neither a proof of claim nor a ballot for or against the Plan. Again, Code § 1141(a), dictating that a confirmed plan binds a creditor whether or not the creditor's claim is impaired by the plan, and whether or not the creditor has accepted the plan, must control.

"If a party has an objection to provisions of a proposed plan, it is the responsibility of that party to raise its objection in a timely manner." *Andsu, Inc. v. City of Kokomo (In re Sassi),* 51 B.R. 534, 542 (Bankr.S.D.Ind.1983). *See also In re Pennsylvania Iron and Coal Co., Inc., supra,* 56 B.R. at 496. Indeed, the Tenth

Circuit Court of Appeals recently spoke on the obligation of creditors in Chapter 11 cases to take an active role in protecting their claims in *Heins v. Ruti–Sweetwater, Inc. (In re Ruti–Sweetwater, Inc.),* 836 F.2d 1263 (10th Cir.1988). The Circuit Court declared that a creditor who fails to vote for or against a plan of reorganization is deemed to have accepted that plan for purposes of Code § 1129(b)(1) because

> [t]o hold otherwise would be to endorse the proposition that a creditor may sit idly by, not participate in any manner in the formulation and adoption of a plan in reorganization and thereafter, subsequent to the adoption of the plan, raise a challenge to the plan for the first time.

*Id.* at page 1266.

Rome makes the argument that to permit the Debtors' Plan to extinguish its lien status is to permit the Debtors to unilaterally change the approved plan after confirmation. In support of that contention, Rome points to the Debtors' Disclosure Statement, which it alleges, purports to pay its claim in full.

An examination of the Debtors' Disclosure Statement does reveal at page six thereof that both Rome and the County of Oneida are the holders of priority claims and that they will be paid "in full over a 24 month period." To accept Rome's contention, however, that they were entitled to rely solely upon that language as assurance that their lien would survive plan confirmation would be to ignore the meaning of "priority" as set out in Code § 507, as well as the language of the Debtors' Plan, the centerpiece of their reorganization and the document for or against which the creditors were to cast their ballots. Such reliance would also permit Rome to ignore the plain language of the Disclosure Statement found on its first page in clear and conspicuous print—"THE DESCRIPTIONS OF THE PLAN IN THIS DISCLOSURE STATEMENT ARE SUMMARIES ONLY AND ARE QUALIFIED BY REFERENCE TO THE TERMS AND CONDITIONS OF THE PLAN ITSELF".

An examination of the Plan, which Rome presumably undertook before casting its ballot affirmatively, leaves no doubt that the "priority" claims of Rome and the County were to be predominantly dealt with pursuant to Code § 507(a)(7)(B). The fact that Rome may have "misjudged" the significance of the application of Code § 507(a)(7)(B) to its pre-petition tax lien cannot be characterized post-confirmation as a unilateral change in the approved Plan.

Moreover, the statement in Article V regarding the elimination of security interests not provided for in the Plan encompassed the municipalities' liens, and was not terminology foreign to Rome, utilized as it was to describe its tax lien in its answering affidavit. If Rome had any doubt that its tax lien status would not survive the confirmation of the Debtors' Plan, it could and should have filed a timely objection to the Plan's confirmation.

Thus, the Court concludes that Debtors' Plan, as confirmed by Order dated and entered October 21, 1988, constituted an extinguishment of the pre-petition tax liens of Rome and the County of Oneida which arose pursuant to the NYRPTL.

## II.

With respect to Rome, Debtors' Objection seeks to bifurcate its tax claim by paying $6,276.25 as a Class 1 priority, pursuant to § 507(a)(7)(B), and $599.09 as a Class 8 unsecured, and to expunge $224.33 in penalties which Debtors claim were assessed post-petition and, therefore, in violation of the stay imposed pursuant to Code § 362(a).

In response, Rome again states that it did not oppose confirmation because it relied on the Debtors' Disclosure Statement, as well as their Plan, which it contends promised full payment on a specific schedule.

The term "priority" is used in the Disclosure Statement and the Plan when referencing the claims of both Rome and the County. Priority, as indicated, has a significant meaning in the Code. It is not simply a generic term and, in fact, Debtors'

Plan correctly defined "priority" in Article I as "a claim accorded priority in payment over general unsecured claims pursuant to 11 U.S.C. 507" and, as noted, in Article II classified the allowed claims of Rome and the County therein and in Class 8.

Debtors' Plan also provided in Article III, as mentioned, that the allowed priority claims under Code § 507(a)(7)(B) of Oneida County and Rome for pre-petition property taxes of approximately $11,000.00 and $6,988.24, respectively, would be paid in full with interest at the annual rate of nine percent from the confirmation date in monthly increments of $570.00 and $360.00 respectively.

While the Court has previously concluded that Rome was on notice that its pre-petition lien status was clearly being extinguished by the Plan's reference to the term "priority" and Code § 507(a)(7)(B), the Court does not reach the same conclusion with regard to the bifurcation of its claim. The Court believes that there was a material misrepresentation in the Plan of how Rome's claim would be paid and upon which it relied to its detriment.

Had the Plan simply referred to treatment of Rome's claim as a priority claim to be paid in accordance with Code § 507(a)(7)(B), as it did in Article II, the Court could accept the proposed bifurcation. However, the Plan's detailing of the payment of Rome's claim *in full* in Article III and its referencing of specific monthly increments led Rome to believe that the Debtors were conceding that in fact $6,988.24 was the amount of the claim Debtors were agreeing to pay, notwithstanding the application of Code § 507(a)(7)(B).

To permit the Debtors to solicit acceptance of their Plan on that representation, and then argue that because of the reference in the Plan to Code § 507(a)(7)(B), to non-priority tax claims in Class 8, and to a provision permitting Debtors to object to all claims within sixty days after confirmation that Rome's claim may now be bifurcated, is violative of basic principles of contract and bankruptcy law favoring fair-

ness, certainty and finality. *See Official Creditors Committee v. Stratford Of Texas, Inc. (In re Stratford of Texas, Inc.),* 635 F.2d 365, 368 (5th Cir.1981); *In re Bowen,* 89 B.R. 800, 804–05 (Bankr.D.Minn. 1988); *In re Terracor,* 86 B.R. 671, 680 (D.Utah 1988); *In re Ernst,* 45 B.R. 700, 702 (Bankr.D.Minn.1985). *See also City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 48–49 (2d Cir.1988) (setting forth New York rule for promissory estoppel) (citations omitted); RESTATEMENT (SECOND) OF CONTRACTS § 90 (1979).

While Code § 507 permits the Debtors to avoid paying a greater portion of Rome's claim as a priority than would qualify under § 507(a)(7)(B), the Court does not believe that they are prohibited from providing for a different treatment where the creditor consents. *See* Code § 1129(a)(9). The potentially adverse impact of this treatment on the distribution to the general unsecured creditors in Class 8 is neutralized by their awareness presumably of the specific amount being paid to Rome as set forth in Article III of the Plan when they accepted the Plan as a class without objection pursuant to Code § 1126.

Thus, the Court concludes that with regard to Rome, its priority claim of $6,988.24 shall not be bifurcated and shall be paid in full exactly as set out in the Debtors' Plan—with interest at nine percent per annum, in monthly increments of $360.00, commencing on the twenty-fifth day of the eighteenth month following confirmation until fully paid.

■ With respect to Oneida County, the Debtors initially seek a bifurcation and reduction of the scheduled claim of $11,-000.00 by treating $4,395.44 as a priority Class 1 claim and $4,421.08 as a non-priority unsecured Class 8 claim, and the disallowance of all additional amounts which Debtors characterize as "penalties, interest, and advertising costs" assessed postpetition in violations of the Code § 362 stay.

Unlike Rome, there is no competent proof that Oneida County relied, to its detriment, on the misrepresentations contained in Debtors' Plan—it filed no proof of claim, or ballot, either accepting or rejecting the Plan, and lodged no objection to confirmation. Not until Debtors sought to reduce and bifurcate its claim in this contested matter did the County, appear, and then only to dispute the amount of the claim.

In response to the Debtors' Objection, the Answering Affidavit of Charles S. Pasiak, Deputy Commissioner of Finance, sworn to on November 22, 1988, contends that the Debtors' scheduling of its tax claim as $11,000.00 was an estimate and that for the tax years 1985 and 1986 the unpaid taxes, together with "interest, penalties, advertising and other allowable expenses" totalled $13,062.68. Oneida County also asserts that the real property taxes for the tax year 1987 due and owing from January 1, 1987 in the amount of $4,486.65 should be included in Class 1 at least to the extent of thirteen days from January 1, 1987 to January 13, 1987, the date on which the Debtors' petition was filed.

On January 13, 1989, Oneida County submitted a written computation of the amount of pre-petition taxes due on each of the seven parcels. Thereafter, on January 20, 1989, the Debtors filed a written response asserting that Debtors have not acknowledged the 1987 taxes in the County's claim since those taxes were included in Rome's proof of claim and appended a "revised schedule," itemizing the priority and general unsecured taxes, to replace that submitted with their Objection.

The County's failure to file a proof of claim, ballot, or objection to the Plan, resulted in the fixing of its pre-petition tax liability at $11,000.00, as listed in the Debtors' Schedule A–1. *See* Code § 1111(a); Bankr.R. 3003(b)(1). However, in filing this Objection to the amount of that claim post-confirmation, the Debtors' have now opened the door to review of the County's claim by this Court. *See* Bankr.R. 3007.

The difficulty that the Court encounters in assessing Oneida County's computation of its tax claim is that it appears to have been computed without regard to Code § 507(a)(7)(B). Pasiak's affidavit, for example, simply recites the amount of tax

due for the years 1985 and 1986, $4,575.46 and $4,395.44, respectively, and then posits a sum exceeding the total of the two years by approximately $4,000.00 without any further identification and apparently relating to "interest, penalties, advertising and other allowable expenses."

It should be noted that the relevant statutory priorities under Code § 507(a)(7) are subsections (B) and (G), for "a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of filing of the petition" and "a penalty related to a claim of kind specified in the paragraph and in compensation for actual pecuniary loss," respectively.

It appears from the written computation of taxes submitted by Oneida County dated January 11, 1989, that for purposes of the 1985 and 1986 tax years, its claim "due January 13, 1987" includes a five percent penalty, three years of interest and two years of advertising expenses. Additionally, the County's computation for the tax year 1987 contains the letter "R" under the column headed "Certificate Number" which supports Debtors' contention that the 1987 County taxes were included in the amount being sought by Rome for that same tax year.

Debtors' revised schedule, correctly treating the County's claims as unsecured, divides the three tax years into priority (1986 and 1987) and non-priority (1985) and includes the full 1987 County tax as part of Rome's claim. Said schedule concedes that the County's Class 1 priority claim for tax year 1986, under § 507(a)(7)(B), includes a five percent penalty, only one year of interest and only one year of advertising expense while that part of the claim within the general unsecured Class 8 claim (tax year 1985) includes a five percent penalty, two years of interest and two years of advertising expense.

The Court does not fully agree with either the County's or the Debtors' interpretation of the application of Code § 507(a)(7)(B, G) to the priority portion of the former's claim.

Code § 507(a)(7)(B) awards priority status only to a property tax assessed and last payable without penalty within one year prior to the petition date. "Assessed" under this statute has been construed to mean the date on which the tax liability arises. *See Richardson v. First Federal Savings and Loan Ass'n (In re Stroud Wholesale, Inc.)*, 37 B.R. 735, 741 (Bankr. E.D.N.C.1984), *rev'd. on other grounds*, 47 B.R. 999 (E.D.N.C.1985).

Debtors contend that the pertinent date herein is April 1, 1986 for purposes of priority status under Code § 507(a)(7)(B) and the County does not dispute that date. Thus, the Debtors conclude that only the 1986 property taxes due Oneida County are properly entitled to priority status and classify the 1985 taxes as non-priority unsecured. Claiming payment is due Rome, not the County, for the County's 1987 taxes, they exclude these taxes from the County computation to avoid double payment since according the 1987 County taxes priority status as part of Rome's claim. Again, Oneida County does not appear to contest the Debtors' conclusion.

█ The Court, however, parts ways with both the Debtors and the County as to the treatment of interest, penalties and advertising expenses.

This Court in *Craner v. Marine Midland Bank, N.A. (In re Byron and Barbara Craner)*, 110 B.R. 111, 119–20 (Bankr.N.D. N.Y.1988), held that interest on withholding and sales taxes is properly includable as part of the pre-petition tax itself for priority purposes under Code § 507(a)(7)(G) because "[t]he penalty of interest is compensation for the actual monetary loss sustained by a taxing entity for the money's unavailability during the nonpayment period." *Id. See also In re Patco Photo Corp.*, 82 B.R. 192, 196 (Bankr.E.D.N.Y.1988); However, where both interest and penalties are assessed, the latter, punitive by nature, should not enjoy priority since it is not for actual pecuniary loss within the meaning of Code § 507(a)(7)(G) and would, in essence, amount to a "double dip." *See In re New*

*England Carpet Co., Inc.*, 26 B.R. 934, 936 (Bankr.Vt.1983).

The Court can only reach the same conclusion with regard to property taxes.

Thus, the Court does not believe that the five percent penalty totalling $219.78 for all seven parcels is properly includable in Oneida County's priority claim for 1986 property taxes and relegates that amount to the general unsecured status of Class 8.

Advertising costs reflected at $20.00 per parcel per year, although not technically a "penalty," would appear to compensate the taxing authority for actual pecuniary loss. Thus, they should be given priority status as long as they were incurred pre-petition in connection with the 1986 tax. *See Flatau v. Jackson (In re Hirsch–Franklin, Enterprises, Inc.)*, 63 B.R. 864, 874 (Bankr. M.D.Ga.1986).

The Court, therefore, will allow priority status to the County's claim to the extent of $4,996.96 and unsecured non-priority status to the extent of $6,331.90.

Based upon the foregoing it is,

ORDERED that the pre-petition tax liens of Rome and Oneida County were extinguished by virtue of the confirmation of Debtors' Plan on October 21, 1988, and it is further

ORDERED that Rome's claim of $6,988.24, including Oneida County's 1987 taxes, shall be allowed as a priority claim and paid in full in accordance with Class 1 of Debtors' Plan, and it is further

ORDERED that Oneida County's claim shall be fixed at $11,328.86, of which $4,996.96 shall be allowed as a priority claim and paid in full in accordance with Class 1 of Debtors' Plan while the remainder of the Claim, to wit $6,331.90, shall be allowed as a general unsecured claim to be paid in accordance with Class 8 of said Plan.